## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

BEI JING HAN TONG SAN KUN KE JI
YOU XIAN GONG SI (a/k/a HemaTone
Beijing Science Technology Ltd.), a
Chinese corporation,

        Plaintiff,

v.

ATLANTIC MEDICAL PRODUCTS,
LLC (d/b/a Scar Heal), a Florida limited
liability company,

        Defendant.

_____ /

CASE NUMBER: 8:20-cv-2972

## COMPLAINT

Plaintiff BEI JING HAN TONG SAN KUN KE JI YOU XIAN GONG SI, also known as

HEMATONE BEIJING SCIENCE TECHNOLOGY LTD. ("HemaTone" or "Plaintiff"), by and

through its attorneys, files this Complaint against Defendant ATLANTIC MEDICAL

PRODUCTS, LLC, doing business as Scar Heal ("Defendant" or "Scar Heal"), alleging as follows:

## PARTIES

1.    Plaintiff Bei Jing Han Tong San Kun Ke Ji You Xian Gong Si is a Chinese

corporation with its headquarters in Beijing, China. Plaintiff is known as HemaTone Beijing

Science Technology, Ltd., ("HemaTone") which is the English equivalent of, and alias for, Bei

Jing Han Tong San Kun Ke Ji You Xian Gong Si.

2.    Defendant Atlantic Medical Products, LLC is a Florida limited liability company

with a business address at 1402 W. Swann Avenue, Tampa, Florida 33606.

3.    Defendant, doing business as Scar Heal, is formerly known as Scar Heal Limited Liability Company and Scar Heal Corporation, all of the foregoing were, or are, organized under the laws of Florida.

## JURISDICTION AND VENUE

4.    This court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1367 in that the claims herein involve federal questions and arise under Acts of Congress, for which this Court has original jurisdiction, and the additional claims herein are so related to the claims in the action such that they form part of the case or controversy under Article III of the United States Constitution rendering supplemental jurisdiction likewise proper over such claims for breach of contract and unfair competition under state law, and are joined with substantial and related claims brought under federal laws.

5.    This court has subject matter jurisdiction under 28 U.S.C. § 1332 in that the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs, and is between citizens of a State and a foreign nation.

6.    Venue is proper in this district under 28 U.S.C. §§ 1391(a)-(b) because Defendant Scar Heal maintains its principal place of business in this District, and further because Defendant Scar Heal directs activities and consummates transactions within this forum and by selling products, marketing and targeting consumers in this district, and having its allegedly infringing products manufactured and packaged in this district; the contract at issue involves manufacturing activity in this district such that Defendant has not only purposefully availed itself of this district, but has done so in a continuous and systematic fashion such that it has invoked the benefits and protections of the laws of this forum.

## PROCEDURAL HISTORY

7.     On August 12, 2020, Plaintiff brought similar claims of trademark infringement and unfair competition in the matter *Bei Jing Han Tong San Kun Ke Ji You Xian Gong Si v. Atlantic Medical Products, LLC, and Trademark Cosmetics, Inc.* pending before the Central District of California, Eastern Division in Case No. 5:20-cv-01625 (the "California District Court Action"). Attached as **Exhibit 1** is a true and correct copy of the Complaint in the California District Court Action.

8.     On November 16, 2020, Plaintiff voluntarily dismissed Scar Heal from the California District Court Action pursuant to Fed. R. Civ. Pro 41(a)(1)(A)(ii). Plaintiff and Scar Heal stipulated the dismissal was without prejudice to Plaintiff's right to assert its claims against Scar Heal in the Middle District of Florida. Although Scar Heal was dismissed, Plaintiff has continued to pursue its claims in the California District Court Action against Trademark Cosmetics, Inc., Scar Heal's manufacturer (hereinafter "TCI").

## FACTUAL BACKGROUND

A.     **HemaTone's Business**

9.     HemaTone is an international marketer and distributor of medical devices and cosmetic consumer products, including but not limited to molecular diagnostic probes, breathable bandages, skin care lotions, and scar removal gels, among other products.  HemaTone is headquartered in Beijing, China and is owned and operated by its founder, Mr. Fujun Yu.

10.     As part of its business, HemaTone regularly advises and collaborates with foreign companies seeking to market their products to a growing Chinese consumer base.

11.     HemaTone has established a reputation for goodwill in China associated with its products and branding.

12.     As part of its marketing and branding, HemaTone has secured several trademark registrations in China, including but not limited to the mark shown below:

丝芙康

13.     Plaintiff's mark is pronounced, "Si Fu Kang" and is registered in China pursuant to the following details:

| Mark | China Trademark Registration No. | Class | Application Date |
|------|----------------------------------|-------|------------------|
| 丝芙康 | 12508725 | 5 | 2013-04-28 |
| 丝芙康 | 38353495 | 35 | 2019-05-22 |
| 丝芙康 | 38351749 | 44 | 2019-05-22 |
| 丝芙康 | 37349026 | 10 | 2019-04-08 |
| 丝芙康 | 36411898 | 5 | 2019-02-20 |
| 丝芙康 | 36403758 | 3 | 2019-02-20 |

14.     Attached as **Exhibit 2** are true and correct printouts of the Si Fu Kang Mark Chinese Registration Certificates.

15.     HemaTone also has pending trademark applications in the United States for the Si Fu Kang Mark, as shown below:

| Mark | U.S. Trademark Application No. | Class | Application Date |
|------|-------------------------------|-------|------------------|
| 丝芙康 | 90050410 | 3 | July 13, 2020 |
| 丝芙康 | 90050433 | 5 | July 13, 2020 |
| 丝芙康 | 90050465 | 5 | July 13, 2020 |
| 丝芙康 | 90050492 | 10 | July 13, 2020 |

16.     Attached as **Exhibit 3** are true and correct print-outs of the United States Patent and Trademark Office online records showing the Si Fu Kang Mark as applied for by Plaintiff in the U.S.

17.     In addition to its registered and applied-for rights, HemaTone also has established enforceable U.S. and state common law trademark rights to the Si Fu Kang Mark by virtue of use of the Si Fu Kang Mark.

18.     HemaTone uses its Si Fu Kang Mark in connection with a wide variety of products, including but not limited to the products at issue in this case: gels and creams intended for use in the healing of scars. Representative examples of HemaTone's Si Fu Kang Mark on its gel and cream products (front and back) are reproduced below (see Si Fu Kang Mark 丝芙康  front and center).

| Front | Back |
|---|---|



19.     HemaTone's Chinese trademark registrations, U.S. applications and common law rights are in full force and effect, entitling HemaTone to trademark protection.

20.     HemaTone's rights in and to the Si Fu Kang Mark pre-date Scar Heal's use of the Si Fu Kang Mark, as explained more fully below.

21.    HemaTone therefore has priority of trademark rights in the Si Fu Kang Marks.

**B.    Distribution Agreement**

22.    In or around early 2011, HemaTone entered into discussions with Scar Heal concerning a potential distribution of certain scar healing gels and creams in China, where HemaTone has a physical presence.

23.    In or around May 2011, Scar Heal exported several thousand units of Scar Heal products to HemaTone for distribution in China.  Due to the popularity of these products, HemaTone continued to import Scar Heal products for re-sale in China over the next two (2) years.

24.    On or about June 1, 2013, HemaTone and Scar Heal entered into a formal distribution agreement (the "Distribution Agreement") wherein Scar Heal appointed HemaTone as the exclusive distributor in China of certain scar healing gel/cream products.  A true and correct copy of the Distribution Agreement is attached hereto as **Exhibit 4**.

25.    Scar Heal needed HemaTone to facilitate distribution in China consistent with local regulations.

26.    Scar Heal also needed HemaTone's Si Fu Kang Mark affixed to the products imported into China in order to comply with China's regulations.

27.    Pursuant to the Distribution Agreement:

(a)    Scar Heal granted HemaTone an exclusive license to import, sell and distribute Scar Heal products in China and to use Scar Heal's trademarked product names—Scar Fx Silicone Sheeting, Scar Esthetique, Scar Crème, RejuvaSil Scar Gel, Rejuvaskin Skin Serum, and Rejuvaskin Eye Crème—in connection with the sale and distribution of said products. [Distribution Agreement, § 2(a)-(b).]

(b)     The initial term of the Distribution Agreement was three (3) years; however, in the event HemaTone purchased a specific "minimum amount of Products," the Distribution Agreement could automatically renew for another year.   [Distribution Agreement, § 2.]

(c)     HemaTone was permitted, at its own discretion and expense, to authorize sublicensees to sale and distribute Scar Heal products in China.  [Distribution Agreement, §§ 2-3.]

(d)     For the initial three (3) year term, HemaTone committed to importing $200,000 worth of Scar Heal products between June 2013 and December 2013, $400,000 worth of Scar Heal products between January 2014 and December 2014, and $800,000 worth of Scar Heal products between January 2015 and December 2015.  [Distribution Agreement, § 3.]

(e)     HemaTone agreed to obtain, at its own cost and expense, any governmental approvals necessary to effectuate the Distribution Agreement and to enable sales of Scar Heal products in China.  HemaTone was further responsible for obtaining appropriate licenses or permits required to import Scar Heal products into China.  Scar Heal had exclusive rights to all such licenses and permits in the event the Distribution Agreement was terminated.  [Distribution Agreement, §§ 3-4.]

(f)     Scar Heal agreed to "sell or make available to [HemaTone] . . . so much of the Products as required by [HemaTone] during term hereof."  [Distribution Agreement, § 4.]

(g)     Scar Heal agreed to produce products with "custom packaging" as agreed upon by HemaTone.  This custom packaging could include "[HemaTone's] trademark and the translation of the information found on the current product."  [Distribution Agreement, § 4.]

(h)     The custom packaging included the Si Fu Kang Mark, front and center, as shown in Paragraph 18 above.

(i)      HemaTone agreed to pay Scar Heal for its products in accordance with "current prices set by [Scar Heal]" at such time as the Products are ordered."  [Distribution Agreement, § 5.]

(j)      Scar Heal was entitled to terminate the Distribution Agreement by giving written notice only upon (1) HemaTone's "material failure" to perform its obligations under the contract, and (2) HemaTone's failure to cure said breach within sixty (60) days of Scar Heal's written notice.  [Distribution Agreement, § 10.]

(k)      Accordingly, the Scar Heal gels and creams at issue were manufactured and packaged in Riverside, California by TCI under the direction of Scar Heal.

(l)      HemaTone's Si Fu Kang Mark was affixed to the product packaging in the manufacturing process by a manufacturing company, TCI, and Scar Heal and then shipped from Riverside, California by TCI and Scar Heal pursuant to the terms of the Distribution Agreement.

## C.   Sales Under the Distribution Agreement

28.    Between 2013 and 2017, HemaTone and Scar Heal operated under the Distribution Agreement without incident.  Mr. Yu, on behalf of HemaTone, would submit purchase orders to Scar Heal's international sales manager, Chase Connor, and general manager, Darwin Salls.  Mr. Salls or Mr. Connor would then issue confirming invoices to HemaTone containing the agreed-upon pricing and shipping information.

29.    Scar Heal's most popular products in China were RejuvaSil Silicone Scar Gel and Scar Fx Silicone Sheeting.  Although HemaTone was authorized under the Distribution Agreement to sell other Scar Heal products, including Scar Esthetique, Scar Crème, Rejuvaskin Skin Serum, and Rejuvaskin Eye Crème, the vast majority of HemaTone's orders from Scar Heal were for RejuvaSil Silicone Scar Gel and Scar Fx Silicone Sheeting.

30.    Following HemaTone's placement of an order, Scar Heal would communicate HemaTone's order to its California-based manufacturer, TCI.  In turn, TCI would manufacture the requested products, affix HemaTone's Si Fu Kang Mark to the Scar Heal product packaging, and would then release the goods into the stream of commerce so they could then be exported to China.

31.    Between May 2011 and December 2018, HemaTone imported 493,409 units of Scar Heal products into China, from which Scar Heal generated over $1.6M in revenues.

32.    In July 2018, however, Scar Heal unilaterally terminated HemaTone's authorization to sell Scar Fx Silicone Sheeting in China.

33.    Less a year and a half later, in September 2019, Scar Heal terminated HemaTone's authorization to sell RejuvaSil Silicone Scar Gel.

34.    However, Scar Heal and TCI continue to manufacture product and affix an unauthorized mark – the Si Fu Kang Mark, on product, without the consent of HemaTone.

**D.    China Food and Drug Administration Product Registrations**

35.    Scar Heal's blatant attempt to capitalize off the efforts of HemaTone does not stop there: Scar Heal took advantage of the regulatory hurdles HemaTone overcame to allow for Scar Heal's products to be sold in China and continues to do so without compensation to HemaTone.

36.    Specifically, to sell medical devices or cosmetics in China, companies must first register their products with a state regulatory agency, the National Medical Products Administration ("NMPA"), formerly known as the China Food and Drug Administration ("CFDA").

37.    On several occasions between 2011 and 2017, Scar Heal appointed HemaTone as its "legal agent" for purposes of obtaining CFDA regulatory approval to sell Scar Heal products in China.  HemaTone worked diligently to obtain the necessary approvals from the CFDA, including

paying for laboratory testing of Scar Heal's products, translating Scar Heal's product information and inserts, and submitting CFDA product registration applications and associated materials.

38.     All told, HemaTone incurred more than $250,000 in fees and costs associated with registering Scar Heal's products with the CFDA.

39.     On or about January 18, 2013, HemaTone received a registration certificate from the CFDA authorizing the sale of Scar Heal's Scar Fx Silicone Sheeting in China—which also bore the Si Fu Kang Mark.

40.     With the CFDA regulatory certificates in place, and with the Si Fu Kang Mark on products purporting to comply with local requirements, Scar Heal cut HemaTone out of the equation yet continues to sell product in China for its commercial gain.

41.     Scar Heal is making unauthorized use of the Si Fu Kang Mark, infringing the trademark in total disregard for HemaTone's rights, and is using the CFDA approval HemaTone secured.

42.     Scar Heal's acts constitute infringement, breach of contract, and unfair competition.

43.     Likewise, TCI manufactures and affixes the Si Fu Kang Mark on the products in question, without authorization or consent of HemaTone in concert with Scar Heal contributing to the infringement by Scar Heal, and the unfair competition associated therewith resulting in contributory infringement and unfair competition.

**E.     Scar Heal Collects Payment, but Refuses to Fulfill Order**

44.     As he had done several times before, on or about December 18, 2018, Mr. Yu, on behalf of HemaTone, ordered 10,000 units of 15mL RejuvaSil Silicone Scar Gel from Scar Heal (with the Si Fu Kang Mark on it) to distribute in China.  A true and correct copy of HemaTone's purchase order is attached hereto as **Exhibit 5**.

45.     Shortly thereafter, Scar Heal confirmed the order and informed HemaTone that 50% of the purchase price ($29,050) was due immediately, and the balance would be due at a later date.

46.     On or about December 27, 2018, Scar Heal provided HemaTone with a confirming invoice, which included a February 28, 2019 shipment date for the goods.  A true and correct copy of Invoice 0044306 is attached hereto as **Exhibit 6**.

47.     On or about December 28, 2018, HemaTone paid the initial deposit in the amount of $29,050 to Scar Heal.

48.     Less than a week later, on January 2, 2019, Scar Heal confirmed receipt of the payment and stated it would "begin production at the earliest and inform [HemaTone] of any updates."

49.     Despite the February 2019 shipment date listed in the invoice, no RejuvaSil Silicone Scar Gel units were shipped to HemaTone.

50.     Beginning in March 2019, Mr. Yu repeatedly contacted Scar Heal for an update on the status of HemaTone's order.  Scar Heal's representatives, however, ignored Mr. Yu and refused to answer his telephone calls or respond to his email correspondences.

51.     On or about July 29, 2019, over seven (7) months after HemaTone placed its initial order, Mr. Yu formally requested a refund of the $29,050 deposit paid to Scar Heal.  Once again, however, Scar Heal's representatives refused to respond to Mr. Yu's request.

52.     To date, HemaTone has not received the 10,000 units of 15mL RejuvaSil Silicone Scar Gel that it ordered or a refund of its $29,050 deposit.

F.   **Scar Heal Unilaterally Terminates and Breaches the Agreement and Engages in Trademark Infringement**

53.   In or around April 2019, unbeknownst to HemaTone, Scar Heal appointed another Chinese company known as Beijing Zheng De Tang Yi Liao Qi Xie You Xian Ze Ren Gong Si ("ZDT") as its "legal agent" and exclusive distributor of RejuvaSil Scar Gel products in China, unilaterally terminating and breaching the Agreement.

54.   Scar Heal began selling its RejuvaSil Scar Gel products to ZDT while still affixing HemaTone's Si Fu Kang Mark to the products without authorization, for marketing and distribution in China.

55.   Without sending the paid-for order described above, on or about September 6, 2019, Scar Heal sent a Notice of Termination for RejuvaSil Scar Gel (the "Notice of Termination") to HemaTone.

56.   The Notice of Termination advised HemaTone that its rights associated with RejuvaSil Scar Gel had been terminated, including but not limited to "distribution rights, agency representation, market authority and product registration."  A true and correct copy of the Notice of Termination is attached hereto as **Exhibit 7**.

57.   The Notice of Termination was sent by Mr. Connor, on behalf of Scar Heal, to Mr. Yu via email on September 6, 2019.  The Notice of Termination, however, was backdated to April 3, 2019.  A true and correct copy of the September 6, 2019 email is attached hereto as **Exhibit 8**.

58.   HemaTone is informed and believes the Notice of Termination was intentionally backdated to April 2019 to conform with Chinese regulations that require several month's advance notice before a new local agent is appointed.  Put differently, Scar Heal was setting the stage to appoint another Chinese company, ZDT, as its exclusive distributor of RejuvaSil Scar Gel products in China without HemaTone's knowledge and in breach of the Distribution Agreement.

59.     Scar Heal still has not ceased use of the Si Fu Kang Mark on the product packaging it now distributes through ZDT.

60.     TCI likewise has not ceased affixing the unauthorized and infringing Si Fu Kang Mark on product.

61.     Scar Heal, with actual knowledge of HemaTone's intellectual property rights, continues to affix the Si Fu Kang Mark to the packaging of its RejuvaSil Scar Gel.  Upon shipment to China, ZDT promotes and advertises the sale of RejuvaSil Scar Gel containing HemaTone's Si Fu Kang Mark.

**G.      Scar Heal Tries to Register HemaTone's Si Fu Kang Mark**

62.     In a further attempt to trade off of HemaTone's rights in calculated fashion, on February 1, 2019, shortly after HemaTone ordered product, and just as Scar Heal avoided shipping them to HemaTone, Scar Heal filed an application to register the Si Fu Kang Mark – knowing full well that HemaTone is the owner of this mark.

63.     The application was filed with the United States Patent and Trademark Office ("USPTO") under U.S. Application Serial Number 88286156 by Atlantic Medical Products LLC dba Scar Heal for the identical Si Fu Kang Mark – shown below:

丝芙康

64.     Tellingly, Scar Heal submitted a sample specimen of use – using the very same products made for HemaTone in Riverside and distributed by HemaTone in China.  Attached as **Exhibit 9** is a true and correct copy of the specimen submitted by Scar Heal to the USPTO for Application Serial Number 88286156.

65.     This application was abandoned shortly thereafter.  However, Scar Heal tried its hand again, now filing for a mark containing the word REJUVASKIN plus the Si Fu Kang Mark, as shown below:

Rejuvaskin　丝芙康

66.     This application was filed with the USPTO under U.S. Application Serial Number 88619813 on September 17, 2019 (the "Pending Application") – just as the dispute with HemaTone was arising.

67.     Again, Scar Heal submitted to the USPTO a sample specimen to support the application.  The specimen was again an example of HemaTone's Si Fu Kang Mark on product, submitted without HemaTone's consent and without authorization.  See **Exhibit 10** attached and the image of the specimen in the page below.

68.     In the Pending Application, Scar Heal claims no other individual or entity has the right to use the mark – in blatant disregard for the truth.  See **Exhibit 11** attached, containing a declaration made upon filing the Pending Application. This material misrepresentation is made to the USPTO in an effort to secure a registration.  Accordingly, the Pending Application should be abandoned for fraud on the USPTO.

69.     Moreover, the Pending Application should likewise be rejected based on fraud on the USPTO as Scar Heal has tried to pass off the samples of use as originating from Scar Heal in blatant disregard for HemaTone's trademark rights.

70.     Notably, the USPTO rejected the specimens and Scar Heal has submitted additional specimens.  Likewise, the substitute specimens bear HemaTone's Si Fu Kang Mark and were submitted without HemaTone's consent.

| A Comparison of Rejuvasil Scar Gel Marketed by HemaTone Under Distribution Agreement and Scar Gel Currently | | | |
|---|---|---|---|
| Front | | Back | |
| HemaTone | Scar Heal | HemaTone | Scar Heal |
|  | | | |

| Specimens of Use USPTO App No. 88619813 (pending, filed on 9/17/2019) |
|---|
|   |

71.     Scar Heal's Rejuvasil Scar Gel necessarily competes with HemaTone's skin care products.

72.     Scar Heal's unauthorized use and application for registration of the Si Fu Kang Mark for highly similar goods is likely to cause confusion with HemaTone's products, or to cause mistake, or to deceive as to the affiliation, connection, or association of Scar Heal with HemaTone, or as to the origin, sponsorship, or approval of Scar Heal's goods, services, or commercial activities by HemaTone.

73.     In addition to a likelihood of confusion in the marketplace, Scar Heal's infringement is impeding HemaTone's ability to protect and extend its rights in natural zones of expansion, causing HemaTone harm.

74.     Scar Heal's and TCI's unauthorized use of HemaTone's Si Fu Kang Mark constitutes trademark infringement, likely to cause confusion with HemaTone's products, or to cause mistake, or to deceive as to the affiliation, connection, or association of Scar Heal with HemaTone, or as to the authentic nature of the products sold thereunder.

75.     Such unauthorized use of HemaTone's marks is causing harm to HemaTone.

76.     Scar Heal's continued use of Si Fu Kang Mark has caused and will continue to harm HemaTone.

77.     Scar Heal's filing of and attempt to register the Si Fu Kang Mark is an attempt to erode HemaTone's existing, protectable rights and commit fraud on the USPTO as well as the consuming public.

78.     Accordingly, HemaTone has suffered and will continue to suffer harm if Scar Heal is permitted to continue its infringing activities.

## COUNT I

### (Federal Trademark Infringement (15 U.S.C. § 1114(1))

79.     HemaTone incorporates by reference Paragraphs 1 to 78 above as if set forth in full.

80.     HemaTone has valid and protectable rights in the Si Fu Kang Mark. The Si Fu Kang Mark identifies HemaTone as the source of its skin care products. The Si Fu Kang Mark is inherently distinctive, and, through HemaTone's long use, has come to be associated solely with HemaTone as the source of the products on which it is used prior to the actions of Scar Heal complained of herein.

81.     Scar Heal uses HemaTone's Si Fu Kang Mark, or confusingly similar marks, in connection with the sale, offering or sale, and advertising of identical, competing services, specifically skin care products.

82.     Scar Heal infringes upon HemaTone's Si Fu Kang Mark because it uses the Si Fu Kang Mark or confusingly similar marks consisting of or including the Chinese word "Si Fu Kang" and/or derivatives thereof, in commerce without HemaTone's consent.

83.     Scar Heal's use of HemaTone's Si Fu Kang Mark, or confusingly similar marks, is likely to create confusion, cause mistake, or deceive.

84.     Scar Heal acted intentionally and with actual knowledge that, or with reckless disregard as to whether, its conduct infringes upon HemaTone's rights.

85.     Scar Heal's use of the infringing marks is willful as it adopted the Si Fu Kang Mark with notice and actual knowledge of HemaTone's Si Fu Kang Mark.

86.     As a direct and proximate result of the foregoing actions, Scar Heal is being unjustly enriched and HemaTone is being injured and damaged.

87.     Unless enjoined by this Court, Scar Heal will continue to engage in the aforesaid acts of trademark infringement, thereby causing HemaTone irreparable injury for which it has no adequate remedy at law.

88.     Scar Heal's intentional actions render this an exceptional case, further entitling HemaTone to recovery of its attorney's fees and costs of suit as detailed in 15 U.S.C. § 1117.

## COUNT II

### (Breach of Contract)

89.     HemaTone incorporates by reference Paragraphs 1 to 78 above as if set forth in full.

90.     The Distribution Agreement is a valid and enforceable written contract between HemaTone and Scar Heal.

91.     HemaTone duly performed all material terms and conditions required to be performed by it under the Distribution Agreement, including but not limited to promoting the sale and distribution of Scar Heal's products in China, complying with all applicable governmental regulations and ordinances, and paying the applicable sales price for Scar Heal's products.

92.     Scar Heal breached the Distribution Agreement by, among other things, failing to "sell or make available to [HemaTone] . . . so much of the Products as required by [HemaTone] during term hereof."  Specifically, in or around December 2018, HemaTone placed an order for 10,000 units of 15mL RejuvaSil Silicone Scar Gel from Scar Heal.  Scar Heal confirmed HemaTone's order and represented the goods would be shipped to HemaTone in February 2019. In turn, HemaTone paid an initial deposit in the amount of $29,050 to Scar Heal.  Scar Heal, however, failed to ship any RejuvaSil Silicone Scar Gel units to HemaTone pursuant to the purchase order.

93.     Scar Heal further breached the Distribution Agreement, by among other things, appointing ZDT as its "legal agent" and exclusive distributor of RejuvaSil Scar Gel products in China.  Specifically, in or around April 2019, Scar Heal began selling its RejuvaSil Scar Gel

products to ZDT while still affixing HemaTone's Si Fu Kang Mark to the products without authorization, for marketing and distribution in China.

94.     Despite demand, Scar Heal has failed to cure its breaches of the Distribution Agreement.

95.     All conditions precedent to bringing this suit have been satisfied.

96.     As a direct and proximate result of Scar Heal's breaches of the Distribution Agreement, HemaTone is entitled to compensatory, consequential, and other damages, including without limitation attorneys' fees and costs, with an exact amount to be shown at trial according to proof.

## COUNT III

### (Breach of Covenant of Good Faith and Fair Dealing)

97.     HemaTone incorporates by reference Paragraphs 1 to 78 above as if set forth in full.

98.     The Distribution Agreement is a valid and enforceable written contract between HemaTone and Scar Heal.

99.     The Distribution Agreement included an implied covenant of good faith and fair dealing prohibiting the parties from taking any action that would unfairly interfere with the right of the other party to receive the benefits of the contract.

100.    HemaTone duly performed all material terms and conditions required to be performed by it under the Distribution Agreement, including but not limited to promoting the sale and distribution of Scar Heal's products in China, complying with all applicable governmental regulations and ordinances, and paying the applicable sales price for Scar Heal's products.

101.    Scar Heal unfairly interfered with HemaTone's right to receive the benefits of the contract by, among other things, failing to "sell or make available to [HemaTone] . . . so much of

the Products as required by [HemaTone] during term hereof."  Specifically, in or around December 2018, HemaTone placed an order for 10,000 units of 15mL RejuvaSil Silicone Scar Gel from Scar Heal.  Scar Heal confirmed HemaTone's order and represented the goods would be shipped to HemaTone in February 2019.  In turn, HemaTone paid an initial deposit in the amount of $29,050 to Scar Heal.  Scar Heal, however, failed to ship any RejuvaSil Silicone Scar Gel units to HemaTone pursuant to the purchase order.

102.    Scar Heal further unfairly interfered with HemaTone's right to receive the benefits of the contract by among other things, appointing ZDT as its "legal agent" and exclusive distributor of RejuvaSil Scar Gel products in China.  Specifically, in or around April 2019, Scar Heal began selling its RejuvaSil Scar Gel products to ZDT while still affixing HemaTone's Si Fu Kang Mark to the products without authorization, for marketing and distribution in China.

103.    Despite demand, Scar Heal has failed to cure its breaches.

104.    As a direct and proximate result of Scar Heal's breaches of the covenant of good faith and fair dealing, HemaTone is entitled to compensatory, consequential, and other damages, including without limitation attorneys' fees and costs, with an exact amount to be shown at trial according to proof.

## COUNT IV

### (Unfair Competition and Unfair Business Practices)

105.    HemaTone incorporates by reference Paragraphs 1 to 78 above as if set forth in full.

106.    Defendant's actions, as described above, including but not limited to trademark infringement, constitute unlawful and unfair business practices as defined by Section 501.204, Florida Statutes.

107.    HemaTone has suffered injury in fact and has lost money or property as a result of Defendant's unfair competition in the form of damage to its goodwill, lost sales, and other actual damages.

108.    The harm to HemaTone and to members of the general public outweighs the utility of Defendant's business practices.

109.    Defendant's unlawful, unfair, and fraudulent business practices, as described above, present a continuing threat to members of the public in that they are likely to cause confusion as to the source of Defendant's products in that the general public is likely to believe that Defendant's products originate from, or are affiliated or associated with HemaTone, or are otherwise sponsored or endorsed by HemaTone.

110.    As a direct and proximate result of Defendant's wrongful acts, Defendant obtained unlawful profits to the detriment of HemaTone.

111.    The above-mentioned acts were done in an intentional, willful, malicious, and oppressive manner in conscious disregard for HemaTone's rights.

112.    Unless restrained, Defendant will continue the acts and conduct set forth in this cause of action, to HemaTone's great and irreparable injury, for which damages will not afford adequate relief.

113.    HemaTone is therefore entitled to an injunction prohibiting Defendant's wrongful acts.  Defendant should further be required to restore to HemaTone any and all profits earned as a result of its unlawful actions, or provide HemaTone with such other restitutionary relief as the Court deems appropriate.

114.     Defendant committed the wrongful acts willfully, intending to gain business and a share of the market by riding on HemaTone's reputation and good will.  Defendant's conduct justifies an award of exemplary damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays the Court enter judgment against Defendant as follows:

1.     For an award of actual damages according to proof, but in no event less than $2,000,000;

2.     For an accounting of Defendant's profits;

3.     For disgorgement of Defendant's profits, but in no event less than $2,000,000;

4.     For an award of treble Defendant's profits or Plaintiff's damages, whichever is greater, but in no event less than $6,000,000;

5.     For a judgment that Defendant's infringement and unfair competition has been willful;

6.     For reasonable attorney's fees and costs of suit, including under 15 U.S.C. § 1117;

7.     For pre-judgment interest on all amounts claimed as permitted by law;

8.     For an order enjoining Defendant from using in commerce the Si Fu Kang Mark, and or creating, manufacturing, labeling and shipping into commerce skin care goods bearing said Mark;

9.     For an order impounding for destruction all marketing materials, and other articles bearing the Si Fu Kang Mark;

10.     For an order requiring Defendant to engage in corrective advertising to restore, to the fullest extent possible, the value of the Si Fu Kang Mark.

11.    And for such other, further, and different relief as the Court may deem proper under the circumstances.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial on all issues raised in the Complaint.


Dated:  December 14, 2020.                    **SHUTTS & BOWEN LLP**
                                              Attorneys for Plaintiff
                                              *BEI JING HAN TONG SAN KUN KE JI YOU*
                                              *XIAN GONG SI (a/k/a HemaTone Beijing*
                                              *Science Technology Ltd.)*
                                              1100 CityPlace Tower
                                              525 Okeechobee Boulevard
                                              West Palm Beach, FL  33401
                                              Telephone:  (561) 835-8500
                                              Facsimile:  (561) 650-8530


                                              By:      /s/ *Joseph W. Bain*
                                                      Joseph W. Bain
                                                      Florida Bar No. 860360
                                                      Trial Counsel