## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

BEI JING HAN TONG SAN KUN
KE JI YOU XIAN GONG SI (a/k/a
HemaTone Beijing Science Technology
Ltd.) a Chinese Corporation,

      Plaintiff,

v.                                    Case No. 8:20-CV-2972-CEH-TGW

ATLANTIC MEDICAL PRODUCTS,
LLC (d/b/a Scar Heal), a Florida limited
Liability company,

      Defendant.

_____/

### ORDER

This matter comes before the Court on Defendant Atlantic Medical Products, LLC's Motion to Dismiss with Prejudice Claims I, II, V, and VI of Plaintiff's Amended Complaint [Doc. 36], the Declarations provided by Defendant [Docs. 37 and 38], and Plaintiff Bei Jing Han Tong San Kun Ke Ji You Xian Gong Si's Response in Opposition [Doc. 42]. Defendant argues that the Court lacks subject matter jurisdiction to hear Claims I, II and VI and that Claims I, II, V, and VI are not sufficiently pleaded. Having duly considered the submissions and being fully advised in the premises, the Court will GRANT the Motion to Dismiss, in part.

### I.     BACKGROUND

**a. Facts[1]**

Plaintiff Bei Jing Han Tong San Kun Ke Ji You Xian Gong Si is a Chinese corporation with its headquarters in Beijing, China. [Doc. 29 ¶ 1]. Plaintiff is known as HemaTone Beijing Science Technology, Ltd., which is the English equivalent of and alias for Bei Jing Han Tong San Kun Ke Ji You Xian Gong Si. *Id.* Plaintiff is an international marketer and distributor of medical devices and cosmetic consumer products, including skin care lotions, and scar removal gels, and regularly advises and collaborates with foreign companies to market their products in China. *Id.* at ¶¶ 13–14]. It has established a reputation for goodwill in China associated with its products and branding. *Id.* ¶ 15. Defendant Atlantic Medical Products, LLC is a Florida limited liability company based in Tampa, Florida.  *Id.* ¶ 2. It conducts business as "Scar Heal." *Id.* ¶ 3.

Plaintiff conceptualized various trademarks for the purpose of launching a new product for scar creams and scar healing gels in China. *Id.* ¶ 17. Among the brands conceptualized by Plaintiff in 2011 included the brand and concept for what would come to be known as the SI FU KANG MARK ("Si Fu Kang Mark" or "Mark"), pictured below:

丝芙康

---

[1] The following statement of facts is derived from Plaintiff's Amended Complaint [Doc. 29], the allegations of which the Court must accept as true in ruling on the instant Motion to Dismiss. *Linder v. Portocarrero,* 963 F.2d 332, 334 (11th Cir. 1992); *Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp. S.A.,* 711 F.2d 989, 994 (11th Cir. 1983).

*Id.* ¶ 18. Soon after, Plaintiff developed product packaging for its anticipated goods and the packaging bore the Si Fu Kang Mark. *Id.* ¶¶ 23–24.

Plaintiff sought out Defendant to produce skin creams and gels for sale in China. *Id.* ¶ 27. In or around 2011, Plaintiff came to the United States to meet with representatives of Defendant. *Id.* ¶ 31. Plaintiff and Defendant began discussing a distribution agreement for certain scar healing gels and creams in China under Defendant's Rejuvasil and Rejuvaskin trademarks. *Id.* ¶ 37.  Plaintiff showed Defendant the Si Fu Kang Mark and product packaging. *Id.* ¶ 32. Prior to the 2011 meeting, Defendant had no products bearing the Mark nor did it have any sales in China for any Si Fu Kang-branded products. *Id.* ¶¶ 28–29.

Plaintiff granted Defendant a license for Defendant and its manufacturer, Trademark Cosmetics, Inc. ("TCI"), to affix the Si Fu Kang Mark directly on products in the United States for sale in China. *Id.* ¶¶ 33-34. In one manner of use, Defendant received tubes designed by Plaintiff bearing the Si Fu Kang Mark, shipped those tubes to TCI in California, and then shipped the completed products to Plaintiff for sale in China. *Id.* ¶¶ 35–36. In or around May 2011, Defendant exported several thousand units of its products to Plaintiff for distribution in China bearing Plaintiff's Mark. *Id.* ¶ 58. Due to the popularity of the products, Plaintiff continued to import Defendant's products for re-sale in China over the next two (2) years. *Id.*

On or about June 1, 2013, Plaintiff and Defendant entered into a formal three-year Distributorship Agreement, wherein Defendant appointed Plaintiff as the

exclusive distributor in China of certain scar healing gel/cream products to import, sell, and distribute in China and use Defendant's trademarked product names—including Rejuvasil and Rejuvaskin products. *Id.* ¶¶ 38, 59. The Agreement provided, among other things, that Defendant granted Plaintiff a license to distribute certain products with certain of Defendant's marks, including Rejuvasil Scar Gel and Rejuvaskin Skin Serum and Eye Cream. *Id.* ¶ 39. Absent from the license granted by Defendant to Plaintiff in the 2013 Distribution Agreement was any mention of the Si Fu Kang Mark. *Id.* ¶ 40. Plaintiff granted Defendant a license to affix Plaintiff's mark on products, acknowledging, "custom packaging may include the Distributor's [Plaintiff's] trademark." *Id.* ¶¶ 41, 66. As part of its marketing and branding, Plaintiff applied for and obtained a trademark registration in China for the Si Fu Kang Mark in 2013. *Id.* ¶ 42.

From 2013 to 2017, Plaintiff and Defendant operated under the Agreement without incident. *Id.* ¶ 67. After the initial term, the Agreement was never formally renewed, but the parties agreed to continue operating under its terms. *Id.* ¶ 72. Defendant's most popular products in China were "Rejuvasil Silicone Scar Gel" and "Scar Fx Silicone Sheeting." *Id.* ¶ 70. Although Plaintiff was authorized under the Distribution agreement to sell other products from Defendant, the vast majority of Plaintiff's orders from Defendant were for these named products, branded with Plaintiff's Si Fu Kang Mark. *Id.* In the event the Agreement was terminated, Defendant had exclusive rights to any license or permit obtained by Plaintiff—at its own cost and expense—in order to import Defendant's products into China. *Id.* ¶

66(e). Defendant was entitled to terminate the Agreement by giving written notice only upon (1) Plaintiff's "material failure" to perform its obligations under the contract, and (2) Plaintiff's failure to cure said breach within sixty (60) days of Defendant's written notice. *Id.* ¶ 66(k).

Between May 2011 and December 2018, Plaintiff imported 493,409 units of Defendant's Products into China, from which Defendant generated over $1.6 million dollars in revenue. *Id.* ¶ 73. In or around July 2018, Plaintiff ordered 10,000 units of 15 mL Rejuvasil Silicone Scar Gel, 10,217 units of 4 mL Scar Esthetique Scar Crème, and 30,000 units of 10 mL Scar Esthetique Scar Crème and paid Defendant approximately $114,000 for these products. *Id.* ¶ 89. Upon inspection, 3,000 units of the Rejuvasil Silicone Scar Gel, 1,508 units of the 4 mL Scar Esthetique Scar Crème, and 3,544 units of the 10 mL Scar Esthetique Scar Crème were confirmed defective. *Id.* ¶ 90. The defective products had a value of approximately $24,000. *Id.* Around the same time this order was placed, in July 2018, Defendant terminated Plaintiff's authorization to sell scar Fx Silicone Sheeting. *Id.* ¶ 74. Plaintiff notified Defendant regarding the product quality issues in or around January 2019, offered photographs of the defective product, and offered Defendant the opportunity to inspect the products in Plaintiff's warehouse. *Id.* ¶ 91. Plaintiff requested that Defendant reimburse Plaintiff for the $24,000 worth of defective products that could not be sold but Defendant has refused to do so. *Id.* ¶ 92.

On or about December 18, 2018, Plaintiff ordered 10,000 units of 15 mL Rejuvasil Silicone Scar Gel from Defendant, affixed with the Si Fu Kang Mark, to

distribute in China. *Id.* ¶ 94. Shortly after, Defendant confirmed the order and informed Plaintiff that 50% of the purchase price ($29,050) was due immediately with the remaining balance due on a later date. *Id.* ¶ 95. On or about December 27, 2018, Defendant provided Plaintiff with a confirming invoice, which included a February 28, 2019, shipment date for the goods, and Plaintiff paid the initial deposit of $29,050 on December 28, 2018. *Id.* ¶¶ 96–97. On January 2, 2019, Defendant confirmed receipt of the payment and stated it would begin production and inform Plaintiff of any updates. *Id.* ¶ 98. However, the product was never shipped. *Id.* ¶ 99.

Around the same time Plaintiff was awaiting shipment of the order, Defendant contacted Plaintiff and attempted to negotiate a royalty agreement for the use of the Si Fu Kang Mark, stating in a February 15, 2019, email to Plaintiff:

> Although developed by [Plaintiff], this trademark is currently being used for our Rejuvasil product. This trademark may also be useful for other products in the future. [Defendant] would like [Plaintiff] to transfer ownership of this trademark to [Defendant]. [Defendant] is willing to compensate [Plaintiff] by offering a royalty on the use of this trademark on future sales of products bearing the name Si Fu Kang (in Chinese writing).

*Id.* ¶ ¶115–116. Unbeknownst to Plaintiff, on February 1, 2019, Defendant filed an application with the United States Patent and Trademark Office ("USPTO")—under U.S. Application Serial Number 88286156—to register the Si Fu Kang[2] despite

---

[2] The mark is pictured below:

丝芙康

knowledge that Plaintiff was the owner of the mark. *Id.* ¶¶ 114, 118. To support its application, the sample specimen contained the Si Fu Kang Mark on the product without Plaintiff's consent or authorization. *Id.* ¶ 119.

Beginning March 2019, Plaintiff contacted Defendant for updates on the status of the order that had been due to ship on February 28, 2019, but Defendant was unresponsive to telephone calls and emails. *Id.* ¶ 100. On or about July 29, 2019, over seven (7) months after Plaintiff placed the initial order, Plaintiff formally requested a refund of the $29,050 deposit paid to Defendant. *Id.* ¶ 101. Again, Defendant's representatives were unresponsive to the request. *Id.*

Also unbeknownst to Plaintiff, on or around April 2019, Defendant appointed a different Chinese company known as Beijing Zheng De Tang Yi Liao Qi Xie You Xian Ze Ren Gong Si ("ZDT") as its legal agent and exclusive distributor of Rejuvisil Scar Gel products in China. *Id.* ¶ 104. Defendant authorized ZDT to sell products affixed with the Si Fu Kang Mark without authorization or consent. *Id.* ¶ 88. Defendant also continued to manufacture these products and affix Plaintiff's Si Fu Kang Mark without Plaintiff's consent, and ZDT began to sell Rejuvasil Scar Gel products bearing Plaintiff's Si Fu Kang Mark without Plaintiff's authorization. *Id.* ¶¶ 76, 105.

On or about September 6, 2019, Defendant sent Plaintiff a Notice of Termination for Rejuvasil Scar Gel, terminating Plaintiff's rights to "distribution rights, agency representation, market authority, and product registration." *Id.* ¶¶ 75, 106–07. Despite being sent on September 6, 2019, the Notice of Termination was

backdated to April 3, 2019. *Id.* ¶ 108. To date, Defendant has not ceased use of the Si Fu Kang Mark on the product packaging it now distributes through ZDT. *Id.* ¶ 110.

At some point, Defendant's application with the USPTO was abandoned, and a new application was filed for a new mark containing the word REJUVASKIN plus the Si Fu Kang Mark:

Rejuvaskin   丝芙康

*Id.* ¶ 120. The new application was filed in September 2019 with the USPTO under U.S. Application Serial Number 88619813, and again the sample specimen to support the application contained the Si Fu Kang Mark without Plaintiff's consent or authorization. *Id.* ¶¶ 121–22. On the application, Defendant claimed that no other individual or entity had the right to use the mark. *Id.* ¶ 123. The USPTO originally rejected the specimens, but after Defendant submitted additional specimens, it granted registration of Plaintiff's Registered Mark. *Id.* ¶ 124–25. Additionally, Defendant began to affix a second mark to their products, the "Si Fu Mei Mark," which is nearly identical to Plaintiff's Si Fu Kang Mark in sound, connotation, and appearance. *Id.* ¶ 77.

On July 13, 2020, Plaintiff applied for registration of its mark in the United States. *Id.* ¶ 46; Doc. 29-3. It received office actions[3] based on Defendant's registration

---

[3] "An office action is an official letter sent by the USPTO. In it, an examining attorney lists any legal problems with your chosen trademark, as well as with the application itself. [The Applicant] must resolve all legal problems in the office action before [the USPTO] can register [the] trademark." USPTO, https://www.uspto.gov/trademarks/maintain/responding-office-actions (last visited 12/1/2021).

of the word REJUVASKIN plus the Si Fu Kang Mark. [Doc. 29 ¶ 205]. Defendant's registered mark is identical in part, and is confusingly similar, to Plaintiff's applications and the goods are identical in part, and confusingly similar, to the goods covered by Defendant's applications. *Id.* ¶ 216. Defendant's registered mark is a bar to Plaintiff's applications. *Id.* ¶ 207.

### b. Procedural History

Plaintiff filed this action against Defendant on December 14, 2020. [Doc. 1]. On April 9, 2021, Plaintiff amended the complaint. [Doc. 29]. The Amended Complaint alleges six claims against Defendant. *Id.* **Count I** alleges trademark infringement in violation of 15 U.S.C. § 1125(a). *Id.* ¶¶ 135–50. In **Count II**, Plaintiff seeks to hold Defendant liable for contributory trademark infringement for its role in ZDT'S infringing use of its mark. *Id.* ¶¶ 151–68. **Count III** is a state law breach of contract claim. *Id.* ¶¶ 169–80. **Count IV** alleges a breach of the covenant of good faith and fair dealing implied within their Agreement. *Id.* ¶¶ 181–92. **Count V**[4] alleges unfair competition and unfair business practices under Section 501.204, Florida Statues. *Id.* ¶¶ 193–203. **Count VI** requests cancellation of Defendant's registration for REJUVASKIN plus the Si Fu Kang Mark, and its removal from the registry and as a bar to Plaintiff's applications for registration. *Id.* ¶¶ 203–19.

---

[4] Plaintiff includes six (6) claims in his Amended Complaint, but two of the claims are titled "COUNT VI." Therefore, the court addresses "COUNT VI," which is a claim of unfair competition and unfair business practices as "COUNT V."

Defendant has moved to dismiss specific counts of the Amended Complaint, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). [Doc. 36]. As to Rule 12(b)(1), it argues that the Court lacks subject matter jurisdiction to apply the Lanham Act extraterritorially because (i) Plaintiff is a foreign plaintiff without any US trademark rights in the disputed mark, (ii) Plaintiff alleges no activity leading to confusion in the United States, and (iii) ongoing litigation in China involves the validity of Plaintiff's Chinese trademark registrations. *Id.* at pp.13-18. Defendant reasons that this Court's adjudication of Counts I and II would amount to the adjudication of a Chinese infringement dispute under U.S. law. *Id.* at pp. 17-18. As such, it believes the Court lacks subject matter jurisdiction over the claims for trademark infringement **(Count I)** and contributory trademark infringement **(Count II)**. *Id.* at pp. 13-19. Defendant further argues that trademark cancellation proceedings are normally the province of the Trademark Trial and Appeal Board (TTAB) of the USPTO, such that the Court does not have jurisdiction over the request to cancel Defendant's uninvolved registered trademark **(Count VI)**. *Id.* at pp. 21-24.

In response, Plaintiff argues that each of the three factors for conferring jurisdiction over extraterritorial disputes involving trademark infringement claims weighs in its favor. [Doc. 42 at 10–16. Plaintiff further contends that it cannot obtain the relief it seeks against Defendant in front of a Chinese tribunal and that the Court is able to hear the case without engaging in any complicated analysis of Chinese law. *Id.* at pp. 16-17. Additionally, Plaintiff contends that the Trademark Trial and Appeals

Board is not vested with the exclusive authority to determine trademark cancellation as Section 37 of the Lanham Act, 15 U.S.C. § 1119, empowers federal courts to order the cancellation of federally registered trademarks in any action involving a registered mark. *Id.* at pp. 18-19.

Defendant also argues that the claim for trademark infringement **(Count I)** and the claim for unfair competition and unfair business practices **(Count V)** should be dismissed pursuant to Rule 12(b)(6). [Doc. 36]. As to **Count I**, Defendant argues that the amended complaint does not plausibly allege that Plaintiff has common law trademark rights in the United States because the mark in question has not been "used in commerce" via actual sales or through wide public recognition of the mark within the United States. *Id.* at pp. 8–13. Plaintiff responds that Defendant's own admissions indicate the mark has been "used in commerce" in the United States since at least 2016 when Defendant filed trademark registrations with the USPTO. [Doc. 42 at pp. 6-9]. Plaintiff further contends that the complaint alleges facts to plausibly suggest "use in commerce" because the mark was affixed upon goods that were manufactured and transported intrastate and internationally. *Id.* at 9-10.

Defendant next argues that dismissal of **Count V** is warranted because Section 501.204, Florida Statutes "protects non-Florida consumers only when the alleged wrongful conduct occurred within the State of Florida" and the complaint alleges wrongful conduct related to the parties' business dealings in China and not in the state of Florida. [Doc. 36 at pp. 19-20]. In response, Plaintiff contends that the claim is

sufficiently pleaded as the breached Agreement is a contract governed by Florida law and Defendant's actions of shipping goods bearing the Si Fu Kang mark from Florida to a competing company in China, its refusal to ship products to Plaintiff or accept returns of defective products from Plaintiff, its fraudulent registration of the Si Fu Kang Mark, and all other acts in breach of the contract amount to wrongful conduct which occurred within the state of Florida. [Doc 42 at 17–18].

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(b) provides several defenses that may be asserted in response to a complaint. Pursuant to Rule 12(b)(1), an action is subject to dismissal if subject-matter jurisdiction is lacking. Fed. R. Civ. P. 12(b)(1). "Subject - matter jurisdiction . . . concerns a court's competence to adjudicate a particular category of cases." *Wachovia Bank v. Schmidt*, 546 U.S. 303, 316 (2006). "Motions to dismiss for lack of subject matter jurisdiction . . . may attack jurisdiction facially or factually." *Roberts v. Swearingen*, 358 F. Supp. 3d 1341, 1346 (M.D. Fla. 2019) (citing *Morrison v. Amway Corp.*, 323 F.3d 920, 924 n.5 (11th Cir. 2003)). "A facial attack on the complaint requires the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232–33 (11th Cir. 2008). "Factual attacks, on the other hand, challenge the existence of subject-matter jurisdiction in fact, and the district court may consider matters outside of the pleadings." *Koury v. Sec'y, Dep't of*

*Army*, 488 F. App'x 355, 356 (11th Cir. 2012). Here, a factual challenge is asserted, as the parties rely on declarations in support of or in opposition to the motion to dismiss.

Rule 12(b)(6) allows for dismissal based on a plaintiff's failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). On a motion to dismiss for failure to state a claim, the allegations in the complaint must be accepted as true and construed in the light most favorable to the plaintiff. *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 694 (11th Cir. 2016). It is well established that "[a] complaint must not be dismissed unless it is shown that plaintiff can prove no set of facts in support of this claim, which would entitle him to relief." *Jackam v. Hosp. Corp. of Am. Mideast*, 800 F.2d 1577, 1579 (11th Cir. 1986). To survive a motion to dismiss under Rule 12(b)(6), a pleading must include a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (internal quotation marks omitted) (quoting Fed. R. Civ. P. 8(a)(2)). Labels, conclusions and formulaic recitations of the elements of a cause of action are not sufficient. *Id*. at 678 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Furthermore, mere naked assertions are not sufficient. *Id*. A complaint must contain sufficient factual matter, which, if accepted as true, would "state a claim to relief that is plausible on its face." *Id*. (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citation omitted). The Court, however, is not bound to accept as true a legal conclusion stated as a "factual allegation" in the complaint. *Id*.

In ruling on a motion to dismiss, "[a] court is generally limited to reviewing what is within the four corners of the complaint." *Austin v. Modern Woodman of Am.*, 275 F. App'x 925, 926 (11th Cir. 2008) (quoting *Bickley v. Caremark RX, Inc.*, 461 F.3d 1325, 1329 n.7 (11th Cir.2006)). This includes attachments or exhibits provided with the complaint. *See Gill as Next Friend of K.C.R. v. Judd*, 941 F.3d 504, 511 (11th Cir. 2019) ("The Civil Rules provide that an attachment to a complaint generally becomes 'part of the pleading for all purposes,' Fed. R. Civ. P. 10(c), including for ruling on a motion to dismiss."); *Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016) (noting that attached exhibits to a complaint can be considered on a motion to dismiss). "[W]hen exhibits attached to a complaint 'contradict the general and conclusory allegations of the pleading, the exhibits govern.' " *Gill*, 941 F.3d at 514. A document outside the four corners of the complaint may still be considered if it is central to the plaintiff's claims and is undisputed in terms of authenticity. *FindWhat Inv'r Grp. v. FindWhat.com*, 658 F.3d 1282, 1297 n.15 (11th Cir. 2011) (citing *Maxcess, Inc. v. Lucent Techs., Inc.,* 433 F.3d 1337, 1340 n. 3 (11th Cir.2005)).

## II.   DISCUSSION

### a.  Subject Matter Jurisdiction

"The jurisdiction of a court over the subject matter of a claim involves the court's competency to consider a given type of case and cannot be waived or otherwise conferred upon the court by the parties." *Jackson v. Seaboard Coast Line R.R. Co.*, 678 F.2d 992, 1000 (11th Cir. 1982). "[W]ithout jurisdiction the court cannot proceed at

all in any cause." *Univ. of S. Alabama v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999). As such, "a court should inquire into whether it has subject matter jurisdiction at the earliest possible stage in the proceedings." *Id.*; *Cadet v. Bulger*, 377 F.3d 1173, 1179 (11th Cir. 2004) (federal courts are obligated to inquire into subject matter jurisdiction *sua sponte* whenever it may be lacking). Plaintiff asserts that the Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1332. [Doc. 29 ¶ 4]. Defendant challenges whether there is subject matter jurisdiction over the trademark infringement and cancellation claims in Counts I, II, and VI. [Doc. 36].

<u>Extra-territorial application of the Lanham Act: Counts I and II</u>

Defendant argues that the Court does not have jurisdiction over Counts I and II because Plaintiff has not pleaded facts sufficient for the extraterritorial application of the Lanham Act. [Doc. 36 at 13–18]. Those facts, the parties agree, must meet the standard from *Steele v. Bulova Watch Co.,* 344 U.S. 280 (1952). [Doc. 36 at pp. 13-14; Doc. 42 at pp. 10-16]. In *Bulova*, the Supreme Court explained that in prescribing standards of conduct for American citizens, Congress may project the impact of its laws beyond the territorial boundaries of the United States and that the Lanham Act confers broad jurisdictional powers upon the courts of the United States. *Id.* at 283-284. Consistent with the broad power, federal courts generally may enforce the Lanham Act extraterritorially against citizens of the United States so long as "the rights of other nations or their nationals are not infringed." *Id.* at 285-286. In finding that the exercise of jurisdiction was proper in that case, the Court reasoned that the defendant's operations and their effects were not confined within the territorial limits

15

of a foreign nation. *Id.* at 286. Based on the decision of the Court in *Bulova*, a court should consider the following factors when deciding whether it has jurisdiction over an extraterritorial dispute involving trademark infringement: 1) whether Defendant is a United States citizen;[5] 2) whether the foreign activity had substantial effects in the United States; and 3) whether exercising jurisdiction would interfere with the sovereignty of another nation. *Int'l Cafe, S.A.L. v. Hard Rock Cafe Int'l (U.S.A.), Inc.*, 252 F.3d 1274, 1278 (11th Cir. 2001); *Commodores Ent. Corp. v. McClary*, 879 F.3d 1114, 1139 (11th Cir. 2018) (stating same).

The complaint, here, does not sufficiently plead Defendant's citizenship. It contains the following allegations:

> 2. Defendant Atlantic Medical Products, LLC is a Florida limited liability company with a business address at 1402 W. Swann Avenue, Tampa, Florida 33606.
>
> 3. Defendant, doing business as Scar Heal, is formerly known as Scar Heal Limited Liability Company and Scar Heal Corporation; all of the foregoing were, or are, organized under the laws of Florida.

[Doc. 29 ¶¶ 2-3]. However, Plaintiff does not identify Defendant's members nor their citizenship as is required where a party is a limited liability company. "To properly allege the citizenship of an LLC, a party must identify all of the LLC's members and their citizenships." *Alliant Tax Credit Fund XVI, Ltd. v. Thomasville Cmty. Hous., LLC*,

---

[5] While the case law specifically uses the word corporation in stating this first requirement, it is the citizenship of the defendant—not also the type of entity—that matters. *See Commodores Ent. Corp. v. McClary*, 879 F.3d 1114, 1139 (11th Cir. 2018) (noting that the parties, including an individual and a limited liability company, are citizens of the United States).

713 F. App'x 821, 824 (11th Cir. 2017) (citing *Mallory & Evans Contractors & Eng'rs, LLC v. Tuskegee Univ.*, 663 F.3d 1304, 1305 (11th Cir. 2011)). As such, the first element has not been satisfied.[6]

However, the second and third elements are satisfied. As to the second factor, the Court agrees that the allegation in ¶ 144 of the complaint suffices to show substantial effects. That allegation states:

> Scar Heal's use of HemaTone's Si Fu Kang Mark, or confusingly similar Si Fu Mei Mark, has substantial effects in the United States insofar as Scar Heal's principal place of business is in Florida; Scar Heal directs the manufacture of infringing products from Florida; Scar Heal receives, processes, and manages orders of its products from Florida; Scar Heal utilizes intrastate and interstate modes of transportation for trans-shipment of its products from Florida; Scar Heal solicits foreign distributors and customers for sales of infringing products from Florida; and Scar Heal receives revenues and profits on foreign sales of infringing products in Florida.

[Doc. 29 ¶ 144]. The allegation here is not like that in *International Café*, which the Court found insufficient to meet the requirement for substantial effects. In that case, the court noted that "[t]he only substantial effect in the United States alleged by

---

[6] At the hearing, Defendant conceded it is a citizen of Florida. The Declaration of Thomas T. Christenberry III, presented by Defendant in support of its motion, states that Mr. Christenberry is "a member/manager of Atlantic Medical Products, LLC" and "a resident of the State of Florida." [Doc. 37 ¶ 1]. But, "[r]esidence alone is not enough" to establish citizenship. *Travaglio v. Am. Exp. Co.*, 735 F.3d 1266, 1269 (11th Cir. 2013). Additionally, the declaration does not explain whether there are other members of Defendant limited liability company. The court will allow Plaintiff an opportunity to amend the complaint to properly allege Defendant's citizenship. Amendment is warranted, particularly where Defendant concedes that it is a citizen of Florida.

Plaintiff is financial gain by Defendant, like royalties and merchandise commission"
and that the financial gain received was insufficient to establish the "substantial
effects" required by *Bulova. Int'l Cafe*, 252 F.3d at 1278.

Rather, this case is more analogous to *Parsons v. Regna*, 847 F. App'x 766 (11th
Cir. 2021). There, Regna argued that Parsons failed to show substantial effects because
"Regna's infringing activities were limited to '[a] single concert in Barcelona' that did
not have 'an effect on United States commerce, let alone a substantial' one." *Id.* at 770.
The Court disagreed, reasoning that the two U.S. defendants allegedly violated U.S.
trademarks by: running their business in the U.S., soliciting former musicians to play
in an 'imposter band' in the U.S., maintaining infringing internet domains in the U.S.,
and drafting and sending emails from the U.S. to solicit infringing bookings and that
this satisfied the *Bulova* "substantial effects" test. *Id.* at 771. As in that case, the
allegations in this case reflect that Defendant conducts its business in the United States
and has engaged in significant activities from its office here, including taking and
processing orders, soliciting foreign distributors, and directing the manufacture of
infringing goods. *See also Babbit Elecs., Inc. v. Dynascan Corp.*, 38 F.3d 1161, 1179-80
(11th Cir. 1994) (finding that Lanham Act jurisdiction existed where Babbit imported
cordless telephones into the United States to a free trade zone before shipping them to
South America and noting that the negotiations leading to the Agreement occurred
primarily in the United States and sales were orchestrated from the Florida office); *Levi
Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995) (applying
Lanham Act to extraterritorial activities and reasoning that the evidence suggests some

of the counterfeit jeans were shipped through the United States on their way to Europe, the alleged transactions involved fraudulent documents stating that the jeans were made in the United States, and many of the alleged illegal activities, including locating and negotiating with prospective buyers and arranging for shipment, occurred in the United States). For this same reason, there is no merit to Defendant's claim that the allegation in ¶ 144 impermissibly conflates the first and second *Bulova* factors.

Lastly, this Court's exercise of jurisdiction will not interfere with the sovereignty of another nation. This case is concerned with rights to the unregistered mark in the United States, whereas the case in China is concerned with rights to the registered mark in that country. Additionally, as Plaintiff notes, Defendant is not a party to the action in China. That action is against Defendant's Chinese distributor. Therefore, Plaintiff cannot obtain relief in a Chinese tribunal for Defendant's infringement of its unregistered mark. Contrary to Defendant's claim, this is not an action involving the validity of Plaintiff's Chinese trademark registration. Moreover, the Court notes that to the extent the Chinese registration is relevant, there appears to be no dispute that the registration is held by Plaintiff and that ZDT sold products bearing Plaintiff's registered Chinese mark. Thus, it is not expected that there will be a need to engage in any analysis of Chinese law in this case. Hence, the third factor, too, supports extraterritorial application of the Lanham Act.

<u>Cancellation of a Mark by the District Court: Count IV</u>

Defendant also argues that the Court lacks jurisdiction over the claim to cancel its U.S. trademark registration for "REJUVASKIN 丝芙康" because cancellation

proceedings are normally the province of the TTAB, and the Lanham Act provides for jurisdiction in the federal courts *only* when there is an "action involving a registered mark." [Doc. 26 at pp 21-22]. "[T]he Lanham Act expressly gives district courts the power to cancel federal trademarks issued by the PTO when they violate the Lanham Act." *PlayNation Play Sys., Inc. v. Velex Corp.*, 924 F.3d 1159, 1169 (11th Cir. 2019) (citing 15 U.S.C. § 1119); *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 155 (2015) (stating that "district courts can cancel registrations during infringement litigation, just as they can adjudicate infringement in suits seeking judicial review of registration decisions"). Section 1119 of the Act states that "[i]n any action involving a registered mark the court may . . . order the cancelation of registrations."

The Court agrees with Plaintiff that Defendant's "REJUVASKIN 丝芙康" is such a registered mark. By its plain language, the Act does not restrict the right to initiate cancellation only to the owner of a registered mark and the case law does not impose such a requirement. "Federal courts can cancel a registered mark under § 1119 if the challenger to the registration demonstrates: '(1) that it has standing to petition for cancellation because it is likely to be damaged, and (2) that there are valid grounds for discontinuing registration.' " *Pinnacle Advert. & Mktg. Grp., Inc. v. Pinnacle Advert. & Mktg. Grp., LLC*, 7 F.4th 989, 1004 (11th Cir. 2021) (quoting *Royal Palm Props., LLC v. Pink Palm Props., LLC*, 950 F.3d 776, 782 (11th Cir. 2020)).[7] Defendant has not challenged any of those requirements in its motion.

---

[7] In *Pinnacle*, the cancellation claim is a counterclaim to the plaintiff's infringement claim. However, there is nothing suggesting that a cancellation is only proper in such situations. *See*

Moreover, contrary to Defendant's arguments, its registered mark is not uninvolved. The complaint alleges facts regarding Defendant's application for "REJUVASKIN 丝芙康" including that Defendant included a specimen of Plaintiff's mark without consent and made a material misrepresentation to the USPTO to secure its registration. [Doc. 29 ¶¶ 120-124]. As Plaintiff contended at the hearing on the motion, Defendant's registered mark has been placed squarely in issue by the complaint. Defendant's argument that the Court cannot hear Plaintiff's cancellation claim therefore lacks merit.

However, the Court notes that § 1119 does not create an independent basis for federal jurisdiction. *See Nike, Inc. v. Already, LLC*, 663 F.3d 89, 98 (2d Cir. 2011), *aff'd*, 568 U.S. 85, 133 S. Ct. 721 (2013); *Airs Aromatics, LLC v. Victoria's Secret Stores Brand Mgmt., Inc.*, 744 F.3d 595, 599 (9th Cir. 2014) (stating same); *E. Iowa Plastics, Inc. v. PI, Inc.*, 832 F.3d 899, 903 (8th Cir. 2016) (stating same); *Ditri v. Coldwell Banker Residential Affiliates, Inc.*, 954 F.2d 869, 873 (3d Cir. 1992). Additionally, because Defendant's citizenship has not been established, diversity jurisdiction is unclear at this time and Plaintiff does not meet the requirements for extraterritorial

---

*also Progressive Emu Inc. v. Nutrition & Fitness, Inc.*, 655 F. App'x 785, 797 (11th Cir. 2016) (entertaining Plaintiff's action in the district court to cancel Defendant's Blue Emu mark for an alleged fraud that Defendant's chairman, Richard Guy, committed in completing Defendant's trademark application, but resolving on summary judgment in favor of Defendant on other grounds).

application of the Lanham Act. Without an independent basis for jurisdiction, the Court cannot entertain Plaintiff's request for cancellation. [8]

### b. Sufficiency of Claims

<u>Unregistered Trademark Infringement</u>

15 U.S.C. § 1125(a) codifies § 43(a) of the Lanham Act and protects against "false designation of origin." *Savannah Coll. of Art & Design, Inc. v. Sportswear, Inc.*, 872 F.3d 1256, 1261 (11th Cir. 2017) (quoting *Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc.*, 508 F.3d 641, 647 (11th Cir. 2007)). Pursuant to the statute:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
>
>> **(A)** is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
>>
>> **(B)** in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

---

[8] Again, Defendant has conceded that it is a citizen of Florida and diversity jurisdiction may exist if sufficiently pleaded.

15 U.S.C. § 1125(a)(1). "The section forbids unfair trade practices involving infringement of . . . trademarks, even in the absence of federal trademark registration." *Univ. of Fla. v. KPB, Inc.*, 89 F.3d 773, 776 (11th Cir. 1996); *Matal v. Tam*, 137 S. Ct. 1744, 1752 (2017) ("Without federal registration, a valid trademark may still be used in commerce. And an unregistered trademark can be enforced against would-be infringers in several ways. Most important, even if a trademark is not federally registered, it may still be enforceable under § 43(a) of the Lanham Act, which creates a federal cause of action for trademark infringement.") (citation omitted). "To prevail under this section, a claimant must show (1) that it had prior rights to the mark at issue and (2) that the defendant had adopted a mark or name that was the same, or confusingly similar to its mark, such that consumers were likely to confuse the two." *Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1193 (11th Cir. 2001).

*i.   Use in Commerce*

As to the first element, "[a]ctual substantive rights to a trademark arise based on its use in commerce and its distinctiveness." *Knights Armament Co. v. Optical Sys. Tech., Inc.*, 654 F.3d 1179, 1188 (11th Cir. 2011). Defendant argues that the amended complaint does not plausibly allege "use in commerce" via actual sales or through wide public recognition of the mark within the United States and therefore does not plead a claim for trademark infringement. [Doc. 36 at p. 8–13]. However, Plaintiff contends that its manufacture and shipment of goods bearing the Si Fu Kang mark between California and Florida is sufficient to show open and public use under the

Lanham Act and that Defendant, in its filings with the USPTO, claimed that the mark had been used in commerce as early as November 1, 2016. [Doc. 42 at pp. 6-10].

It is well established that "[c]ommon-law trademark rights are 'appropriated only through actual prior use in commerce.' " *Crystal Ent. & Filmworks, Inc. v. Jurado*, 643 F.3d 1313, 1321 (11th Cir. 2011) (quoting *Planetary Motion,* 261 F.3d at 1193–94). "Use in commerce" may exist even in the absence of sales. *Planetary Motion*, 261 F.3d at 1195. There must be proof of (i) adoption of the mark and (ii) in a way sufficiently public to identify or distinguish the marked goods in an appropriate segment of the public mind as those of the adopter of the mark. *Direct Niche, LLC v. Via Varejo S/A*, 898 F.3d 1144, 1150 (11th Cir. 2018). Courts generally inquire into the activities surrounding the prior use of the mark to determine whether such an association or notice is present. *Planetary Motion*, 261 F.3d at 1195.

Plaintiff has not sufficiently alleged the requisite use in commerce. The shipping of product packaging from China to Florida, then to California where they were filled with the scar healing gels and creams, and then back to Florida and ultimately to China for sale, does not suffice to allege use in commerce in this case. As the court in *Plenary Motion* made clear, "not every transport of a good is sufficient to establish ownership rights in a mark." 261 F.3d at 1196. "[S]ecret, undisclosed internal shipments are generally inadequate" to warrant protection. *Id.* (quoting *Blue Bell, Inc. v. Farah Mfg. Co.*, 508 F.2d 1260, 1265 (5th Cir.1975)); *Direct Niche*, 898 F.3d at 1150 ("secret or *de minimis* uses are generally inadequate"). The use of the mark alleged by Plaintiff is a

secret, undisclosed shipment. This is not enough. *Plenary Motion*, 261 F.3d at 1196. *See also Mystique, Inc. v. 138 Int'l, Inc.*, 375 F. App'x 997, 999 (11th Cir. 2010) ("Trademark claims based upon shipments from a producer's plant to its sales office, and vice versa, have often been disallowed.") (quoting *Blue Bell,* 508 F.2d at 1265). Additionally, Defendant's representation to the USPTO, in its applications, that the mark had been used in commerce as early as November 1, 2016, is insufficient. Although the amended complaint includes the application containing the representation, the representation is conclusory. There is no further statement in the application or in the amended complaint as to the nature of use of the mark in 2016.[9] Absent more facts, Plaintiff does not sufficiently allege prior use in commerce. Because of this, Plaintiff has not established it has unregistered trademark rights in the mark and therefore does not plead a claim for infringement of an unregistered trademark. The claim in **Count I** is due to be dismissed.

ii.   *Likelihood of Confusion*

Defendant also argues that this claim fails because Plaintiff fails to plead a likelihood of confusion. [Doc. 36 at p. 13 n.6]. As Plaintiff does not sufficiently allege use in commerce, the Court need not address this argument. *See S. Grouts & Mortars, Inc. v. 3M Co.*, 575 F.3d 1235, 1251 (11th Cir. 2009) (stating that because Southern

---

[9] Defendant's Trademark/Service Mark Application contains a declaration from Thomas Christenberry regarding use in commerce under 15 U.S.C. § 1051(a) which provides: "The mark is in use in commerce on or in connection with the goods/services in the application." *See* Doc. 29-11, p.3.  Although Plaintiff has not adequately alleged use in commerce, the Court notes that Defendant fails to mention the above declaration and agrees that Defendant's argument appears disingenuous.

Grouts has not established the requisite use in commerce, it need not reach the issue of whether the district court erred in finding that Southern Grouts failed to establish a likelihood of confusion); *Crystal Ent.*, 643 F.3d at 1323 (stating that it need not reach the likelihood of confusion issue because Crystal lacks enforceable rights in the Exposé mark). Regardless, the Court agrees that one cannot allege a likelihood of confusion where a mark has not been used in commerce. To prevail on a trademark infringement claim, a plaintiff must show that the unauthorized use of its mark in commerce was likely to cause confusion. *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1307 (11th Cir. 1998). *See also Custom Mfg.*, 508 F.3d at 647 ("[T]he touchstone of liability in a trademark infringement action is not simply whether there is unauthorized use of a protected mark, but whether such use is likely to cause consumer confusion."); *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 144 (2015) ("The court must decide whether the defendant's use of a mark in commerce 'is likely to cause confusion, or to cause mistake, or to deceive' with regards to the plaintiff's mark.") (citing 15 U.S.C. § 1114(1)(a)). This presents another basis for dismissal of the claim for trademark infringement.

Florida Deceptive and Unfair Practice

FDUTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 983 (11th Cir. 2016) (quoting Fla. Stat. § 501.204(1)). Its purpose is to protect the consuming public and legitimate business enterprises from those engaging in such practices. *Nat. Answers, Inc. v.*

*SmithKline Beecham Corp.*, 529 F.3d 1325, 1333 (11th Cir. 2008). As such, the plaintiff must have been aggrieved by the alleged unfair and deceptive act in order to bring a claim under this Act. *Id.* To state a claim under FDUTPA, a plaintiff must allege (1) a deceptive act or unfair trade practice; (2) causation; and (3) actual damages. *Dolphin LLC v. WCI Communities, Inc.*, 715 F.3d 1243, 1250 (11th Cir. 2013).

The amended complaint alleges that Defendant's acts, including its trademark infringement, constitute unlawful and unfair business practices resulting in unfair competition in the form of damage to Plaintiff's goodwill, lost sales, and other actual damages. [Doc. 29 ¶¶ 194-195]. It further alleges that Defendant's conduct presents a continuing threat in that the general public is likely to believe that Defendant's products originate from, or are affiliated or associated with Plaintiff, or are otherwise sponsored or endorsed by Plaintiff. *Id.* ¶ 197. The fraudulent business practices purportedly occurred within the State of Florida as Defendant's principal place of business is in Florida, the products containing the infringing Si Fu Kang Mark are manufactured in and originate from Florida, and the Distribution Agreement is governed by Florida law. *Id.* ¶ 198.

Defendant argues that FDUTPA protects non–Florida consumers only when the alleged wrongful conduct occurred within the State of Florida and all of the allegedly wrongful conduct relates to the parties' business dealings in China. [Doc. 36 at pp. 18-19]. To the contrary, Plaintiff contends there is a sufficient nexus between the State of Florida and Defendant's wrongful conduct to support a FDUTPA claim because every wrongful act giving rise to the claim was controlled, directed, or ratified

27

by Defendant from its headquarters in Florida. [Doc. 42 at pp. 17-18]. The Court agrees with Plaintiff. Plaintiff alleges that Defendant directs its activities and consummates transactions in Florida and manufactures and packages its allegedly infringing products in Florida. [Doc. 29 ¶ 7]. It further alleges that even after Defendant unilaterally terminated Plaintiff's authorization to sell Defendant's products in China, Defendant continued to manufacture products and affix Plaintiff's mark on those products without Plaintiff's consent. *Id.* ¶¶ 98, 88, 105, 110, 112. Additionally, Defendant is purportedly affixing a mark that is confusingly similar to its mark, the Si Fu Mei Mark. *Id.* ¶ 77. These allegations, taken together, negate Defendant's argument that all of the allegedly wrongful conduct relates to their business dealings in China.[10]

However, the Court finds merit to Defendant's argument that the FDUTPA claim fails because Plaintiff does not allege that the public is likely to be confused by its conduct, which is the basis of the claim. [Doc. 36 at pp. 19-21]. In *Crystal Ent.* the district court found that the plaintiff had failed to prove that it owned the mark at issue or that the use of the mark by the defendants was likely to cause consumer confusion. 643 F.3d at 1319. The appellate court agreed and found that the plaintiff's FDUTPA claim failed because it applied the same legal standard to FDUTPA claims as it does

---

[10] The Court notes that in its written response regarding the dismissal of the FDUTPA claim, Plaintiff discusses breach of the Agreement, which is not the basis of its claim as pleaded in its complaint. [Doc. 42 at pp. 17-18]. Additionally, Plaintiff cites to several allegations which have not been incorporated in the FDUTPA claim and therefore cannot be considered in determining the sufficiency of that claim. *Id.*; *see* Doc. 29 ¶¶ 172-175, 210-212.

for claims under section 43(a) of the Lanham Act. *Id.* at 1321-22, 1323. As explained earlier, Plaintiff's failure to allege use in commerce and a likelihood of confusion from Defendant's unauthorized use renders the Lanham Act claim defective. The FDUTPA claim is also subject to dismissal. *See Custom Mfg.*, 508 F.3d at 652 (holding that Plaintiff's failure to establish a likelihood of confusion as to its Lanham Act claim also extinguishes its claim under Florida law, which included a FDUTPA claim); *Suntree Techs., Inc. v. Ecosense Int'l, Inc.*, 693 F.3d 1338, 1345 (11th Cir. 2012) (applying same reasoning).

## IV.    CONCLUSION

In sum, Plaintiff has not sufficiently pleaded that Defendant is a citizen of the United States. As such, it has not satisfied all the factors that must exist for the Court to apply the Lanham Act extra-territorially. Jurisdiction is therefore lacking over the trademark infringement claims in Counts I and II. The lack of diversity jurisdiction also separately precludes the Court from addressing the cancellation claim in Count VI. Because it appears that Plaintiff can establish jurisdiction, as Defendant has conceded that it is a citizen of Florida, the Court will allow Plaintiff an opportunity to file a Second Amended Complaint.

Additionally, Plaintiff has not sufficiently alleged that the mark has been used in commerce or that there is a likelihood of confusion. These deficiencies further subject the claim for trademark infringement and for violation of FDUTPA to

dismissal.[11] Plaintiff will have an opportunity to correct these deficiencies in its Second Amended Complaint.

Accordingly, it is hereby **ORDERED**:

1. Defendant Atlantic Medical Products, LLC's Motion to Dismiss with Prejudice Claims I, II, V, and VI of Plaintiff's Amended Complaint [Doc. 36] is GRANTED, in part. The claims in Counts I, II, V, and VI of Plaintiff's Amended Complaint are dismissed, without prejudice.

2. Plaintiff is granted leave to file a Second Amended Complaint on or before January 21, 2022 which sufficiently cures the deficiencies identified in this order.

**DONE AND ORDERED** in Tampa, Florida on January 7, 2022.

*Charlene Edwards Honeywell*
Charlene Edwards Honeywell
United States District Judge

Copies to:

Counsel of Record and Unrepresented Parties, if any

---

[11] As to Count II, use of the mark in commerce is also required when stating a claim for contributory trademark infringement. "To be liable for contributory trademark infringement, a defendant must have ... intentionally induced another to infringe a trademark." *Suntree Techs., Inc. v. Ecosense Int'l, Inc.*, 693 F.3d 1338, 1345 (11th Cir. 2012) (quoting 4 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 25:18 at p. 25–54 (4th ed. 2012)). As noted earlier, "[c]ommon-law trademark rights are 'appropriated only through actual prior use in commerce.'" *Crystal Ent.*, 643 F.3d at 1321.