UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BEI JING HAN TONG SAN KUN KE
JI YOU XIAN GONG SI,

      Plaintiff,

v.                        Case No: 8:20-cv-2972-CEH-TGW

ATLANTIC MEDICAL PRODUCTS,
LLC,

      Defendant.

_____

## ORDER

This matter comes before the Court on Defendant Atlantic Medical Products, LLC's ("AMP") Motion for Final Default Judgment (Doc. 73), to which Plaintiff Bei Jing Han Tong San Kun Ke Ji You Xian Gong Si ("HemaTone") has not responded. The Court previously dismissed the Third Amended Complaint without prejudice because of HemaTone's failure to prosecute (Doc. 72). In the instant motion, AMP seeks a default judgment on its counterclaims for breach of contract and declaratory judgment.

Upon review and consideration, and being fully advised in the premises, the Court will grant-in-part and deny-in-part the motion.

## I.    BACKGROUND

AMP is the successor-in-interest of Scar Heal, Inc., a Florida-based producer and seller of skin care products. Doc. 55 ¶¶ 2-3, 7. HemaTone is a Chinese marketer

and distributor of medical and cosmetic products. Doc. 52 ¶ 15.  In approximately 2011, Scar Heal began exporting its products to HemaTone for distribution in China. Doc. 55 ¶ 9.  HemaTone registered a trademark, the Si Fu Kang Mark, to be used on Scar Heal products that were distributed in China. Doc. 52 ¶¶ 19-38, 43-44.  The two companies entered into a written Distribution Agreement on June 1, 2013, that granted HemaTone the exclusive right to import, sell, and distribute Scar Heal products in China. Doc. 55 ¶ 9; *see* Doc. 55-1.  In return, HemaTone was expected to fulfill certain minimum commitments of product orders and handle all Chinese regulatory and other legal requirements at its own expense. *Id.*  At some point in 2018 or 2019, AMP communicated a termination of the Distribution Agreement. *See* Doc. 55-3; Doc. 52 ¶¶ 67-69.  The parties now dispute ownership of the Si Fu Kang Mark.

HemaTone filed suit against AMP in the Central District of California in August 2020, alleging claims related to trademark infringement and unfair competition. *Id.* ¶ 7.  It subsequently dismissed the action and filed a new action against AMP in this Court on December 14, 2020. *Id.* ¶¶ 8-9; Doc. 1.  In a Third Amended Complaint, filed on February 18, 2022, HemaTone alleged that AMP breached the Distribution Agreement in various ways, including by failing to fulfill orders or reimburse HemaTone for defective products, by appointing another company to distribute Scar Heal products in China using the Si Fu Kang Mark, and by failing to reimburse HemaTone for the considerable expenses it incurred to comply with Chinese regulations so that Scar Heal products could be sold in China. Doc. 52 ¶¶ 107-117.

AMP filed an answer and counterclaim on March 8, 2022, asserting a claim of breach of contract and requesting declaratory relief. Doc. 55.  AMP alleges that the Distribution Agreement terminated by its own terms in 2016 because HemaTone failed to satisfy the minimum order commitments, which constituted a breach of contract. *Id.*  AMP further alleges that the Si Fu Kang Mark, and all marks associated with the sale of Scar Heal products in China, are the property of AMP, and that HemaTone's continued use of the Si Fu Kang Mark and Scar Heal name on products sold in China has damaged AMP's reputation in the market. *Id.*

In June 2022, HemaTone's authorized agent and representative, Fujun Yu, was involved in a serious car accident that left him incapacitated and unable to participate in the litigation. Doc. 60 at 2.  HemaTone's counsel moved to withdraw in September 2022, citing a lack of any other agents authorized to act on HemaTone's behalf and an inability to meaningfully communicate with Yu. *Id.*  Counsel explained that Yu's wife, a non-party to the case with no known connection to HemaTone, was the only means of communicating with Yu or HemaTone. *Id.*  The magistrate court granted the motion to withdraw and directed HemaTone to obtain new counsel. Doc. 62. HemaTone did not obtain new counsel.  On November 21, 2022, AMP filed a motion for default with respect to its counterclaim, which was granted on January 1, 2023. Docs. 65, 69.  The Court also dismissed HemaTone's claims against AMP without prejudice for failure to prosecute. *See* Docs. 68, 72.  AMP now seeks a final default judgment on the counterclaims. Doc. 73.

## II.    LEGAL STANDARD

A default judgment may be entered when "a party against whom a judgment … is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1336 (11th Cir. 2014), quoting Fed. R. Civ. P. 55 (a). Typically, allegations in a well-pleaded complaint are established as fact on entry of a default judgment, as long as there is a stated claim that allows for relief. *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1245 (11th Cir. 2015). However, facts that are not well-pleaded or conclusions of law are not accepted as fact. *Id.*  The Eleventh Circuit has likened this standard to the standard under a Rule 12(b)(6) motion to dismiss. *Id.*

Under this standard, a pleading must include a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-678 (2009), quoting Fed. R. Civ. P. 8(a)(2).  Labels, conclusions, and formulaic recitations of the elements of a cause of action are insufficient. *Id.* at 678, citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Likewise, mere naked assertions are insufficient. *Id.*  A complaint must contain sufficient factual matter, which, if accepted as true, would "state a claim to relief that is plausible on its face." *Id.*, quoting *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal citation omitted).  The Court,

4

however, is not bound to accept as true a legal conclusion stated as a "factual allegation" in the complaint. *Id.*

## III.   DISCUSSION

### A. <u>Propriety of Default</u>

First, the Court finds that the entry of a default against HemaTone was procedurally proper despite its circumstances.  A corporation "is an artificial entity that can act only through agents, cannot appear *pro se*, and must be represented by counsel." *Palazzo v. Gulf Oil Corp.*, 764 F.2d 1381, 1385 (11th Cir. 1985).  For this reason, the Local Rules of the Middle District of Florida provide that "[a] party, other than a natural person, can appear through [a] lawyer only." Local Rule 2.02(b)(2), Middle District of Florida.  Courts have found that the entry of a default is appropriate for corporate defendants who do not timely retain new counsel. *See, e.g.*, *J.P. Cosmetics, Inc. v. J. Pinon Enterprises of Tampa, Inc.*, No. 18-cv-24774, 2019 WL 8014413, *1 (S.D. Fla. July 29, 2019); *Wells Fargo, N.A. v. United Credit Recovery, LLC*, 6:13-cv-1465, 2015 WL 12819188, *3 (M.D. Fla. March 4, 2015); *Continental Cas. Co. v. Nat'l Employer Solutions, Inc.*, 1:08-cv-974, 2010 WL 11506863, *2 (N.D. Ga. Feb. 3, 2010); *see also ECOM Products Group Corp. v. Cox*, No. 8:21-cv-1573, 2022 WL 4367157, *1 (M.D. Fla. Sept. 21, 2022) (granting default judgment to defendant on counterclaim after plaintiff failed to obtain new counsel).  As one court explained, "[b]y not obtaining new counsel after their attorneys withdrew, Defendants failed to 'otherwise defend' against

Plaintiff's lawsuit." *Global Tech LED, LLC v. Hi Lumz Int'l Corp.*, No. 2:15-cv-553, 2018 WL 2126956, *4 (M.D. Fla. May 9, 2018) (collecting cases).

Here, HemaTone's failure to obtain new counsel appears to be the result of its agent's sudden incapacitation, rather than a willful failure to continue defending against AMP's counterclaim. Nonetheless, HemaTone is not permitted to defend in this action without counsel, whatever the cause, and the Court is therefore constrained to find that it has defaulted. The Court will proceed to assess the propriety of a default judgment.

### B. Jurisdiction

In determining whether default judgment is proper, a court must first assess whether jurisdiction exists. *Borg-Warner Acceptance Corp. v. Lovett & Tharpe, Inc.*, 734 F.2d 639 (11th Cir. 1984). AMP asserts that the Court has subject matter jurisdiction over the counterclaim based upon diversity of citizenship and a minimum amount in controversy. Doc. 55 at 14-15. In addition, it contends that the Court has personal jurisdiction over HemaTone because HemaTone purposely availed itself of the Court's jurisdiction by initiating this action. *Id.* at 15. The Court agrees that it has jurisdiction over this action and HemaTone.

The Court will first evaluate its subject matter jurisdiction. AMP is a limited liability company whose sole member is a citizen of Florida, while HemaTone is a Chinese corporation with its headquarters in China. Doc. 52 ¶¶ 1-2. There is diversity of citizenship between them. Further, AMP alleges that it has suffered damages from HemaTone's failure to meet the purchase commitments outlined in the Distribution

Agreement, which it contends constitutes a breach of contract. Doc. 55 ¶¶ 13, 26. Exhibit 2 of the Complaint alleges that HemaTone's sales in 2014 and 2015, combined, reached only $595,495, out of a minimum commitment of $1,200,000.00; AMP asserts that it is entitled to receive the difference as damages. Doc. 55-2 at 1-2.  The amount in controversy from these alleged damages alone exceeds $75,000.  Accordingly, the Court finds that it has subject matter jurisdiction based upon diversity of citizenship pursuant to 28 U.S.C. § 1332.

In evaluating personal jurisdiction, the Court must assess the validity of service of process. *See In re Worldwide Web Sys., Inc.*, 328 F.3d 1291, 1299 (11th Cir. 2003) ("insufficient service of process…implicates personal jurisdiction and due process concerns").  Here, HemaTone was electronically served with the counterclaim via ECF, as it had already appeared as the Plaintiff in this action. *See* Doc. 55 at 29; Fed. R. Civ. P. 5(b)(2)(E).  Moreover, HemaTone filed an answer to the counterclaim and did not assert a lack of personal jurisdiction. Doc. 56; *see Palmer v. Braun*, 376 F.3d 1254, 1259 (11th Cir. 2004) ("a defendant waives any objection to the district court's jurisdiction over [it] by not objecting to it in a responsive pleading[.]"); *Pardazi v. Cullman Med. Ctr.*, 896 F.2d 1313, 1317 (11th Cir. 1990) ("A party that fails to raise a defense of lack of personal jurisdiction at the appropriate time is deemed to have conferred personal jurisdiction on the court by consent.").  Finally, HemaTone initiated this action in this Court by filing its own claims against AMP.  The Court concludes it has personal jurisdiction over HemaTone.

## C. <u>Adequacy of Pleadings</u>

Entry of a default judgment is warranted only when there is a sufficient basis in the pleadings for judgment to be entered. *Surtain*, 789 F.3d at 1245.  The Court will analyze the sufficiency of each claim in turn.

### 1.  Breach of Contract (Count I)

AMP first asserts a count for breach of contract based on violations of the Distribution Agreement.  Doc. 55 ¶¶ 23-37.  To assert a claim for breach of contract in Florida, AMP must show: "(1) the existence of a contract, (2) a breach of the contract, and (3) damages resulting from the breach." *Rollins, Inc. v. Butland*, 951 So.2d 860, 876 (Fla. 2d DCA 2006).

AMP alleges that the parties entered into a valid contract, the Distribution Agreement, on June 1, 2013. Doc. 55-1.  AMP has adequately pleaded the existence of a contract pursuant to the first element of a breach of contract.  AMP further alleges that, in return for AMP granting HemaTone an exclusive license to distribute AMP's products in China and providing the products, the contract obligated HemaTone to perform certain duties; HemaTone failed to perform many of the duties, causing injury to AMP. Doc. 55 ¶¶ 26-37.

With respect to the specific breaches, Count I alleges many failures on HemaTone's part, but only some of them are tied to the damages AMP requests in its motion for default judgment: 1) the failure to meet the contract's minimum purchase commitments in 2013, 2014, and 2015; 2) the failure to pay for a December 2018 order;

and 3) the failure to comply with Chinese FDA regulations. *See* Doc. 73 at 10-11.[1]  As a result, the Court will consider the adequacy of each type of breach that is tied to damages to determine whether default judgment may be entered as to each one.

> ### a.  Minimum Purchase Commitments

AMP relies most heavily on HemaTone's failure to satisfy the contract's minimum purchase commitments in 2013, 2014, and 2015.  Although the Distribution Agreement required HemaTone to import $200,000 of products from June 2013 to December 2013, $400,000 in 2014, and $800,000 in 2015, AMP indicates that HemaTone left a total of $639,989.93 in unmet obligations. Doc. 55 ¶¶ 11-13, 24-26; Doc. 55-1 at 3; Doc. 55-2; Doc. 73 at 10-11.   AMP seeks to recover the unmet obligations as damages, in addition to prejudgment interest. *Id.*

Assuming, *arguendo*, that AMP would be entitled to recover the full amount, rather than the net profits it reasonably expected to receive if the orders had been placed, AMP is still not entitled to recover for this breach because the allegations reveal that it is time-barred.

The Eleventh Circuit has recognized that courts may raise the applicable statute of limitations when considering motions for default judgment. *Stegeman v. Georgia*, 290 F. App'x 320, 323 (11th Cir. 2008) (affirming denial of default judgment where claim

---

[1] AMP also alleges that it was damaged in the Chinese marketplace through HemaTone's improper use of AMP's products' mark and name, and its sale of competitors' products in packaging that resembles AMP's. Doc. 55 ¶¶ 17-18, 27, 31-37.  However, AMP's motion for default judgment does not request a monetary judgment with respect to these breaches. *See* Doc. 73 at 10-11, 14.

was time-barred, despite defendant's failure to respond to the complaint; complaint did not present a sufficient basis for default judgment because, "[f]rom the face of Stegeman's complaint, it is clear his claims...are time-barred.").[2]  As in *Stegeman,* other courts have denied motions for default judgment where the allegations of the complaint reveal that the causes of action are beyond the statute of limitations. *See Quire v. Smith*, No. 20-60081-CIV, 2021 WL 630894, *2 (S.D. Fla. Feb. 9, 2021) (where statute of limitations "had long passed" by the time complaint was filed, plaintiff was not entitled to default judgment), *aff'd*, No. 21-10473, 2021 WL 3238806 (11th Cir. July 30, 2021); *Milana v. DECA Fin. Servs., LLC*, No. 8:18-cv-450, 2018 WL 3621366, *2 (M.D. Fla. July 30, 2018) (Covington, J.) (plaintiff could only recover for injuries that fell within the statute of limitations); *Bryan v. Countrywide Home Loans*, No. 8:08-cv-794, 2008 WL 4790660, *6 (M.D. Fla. Oct. 27, 2008) (Merryday, J.) (adopting report and recommendation that recommended denial of motion for default judgment, in part because plaintiff failed to allege facts demonstrating that the relevant acts fell within the statute of limitations).

Although the statute of limitations is an affirmative defense that may be waived if it is not pleaded, *Day v. Liberty Nat'l Life Ins. Co.*, 122 F.3d 1012, 1015 (11th Cir. 1997), here, HemaTone raised the statute of limitations as an affirmative defense in its

---

[2] Unpublished opinions of the Eleventh Circuit are not binding precedent, but may be cited as persuasive authority. 11th Cir. R. 36-2; *see also U.S. v. Riley*, 706 F. App'x 956, 963-64 (11th Cir. 2017) (district court did not err by relying on an unpublished Eleventh Circuit opinion where the court understood the opinion's persuasive nature and did not err in its legal analysis).

answer to the counterclaim before it defaulted. *See* Doc. 55 at 11; *cf. Cross v. Equityexperts.org, LLC*, No. 19-14067, 2021 WL 5279412, *6 (11th Cir. Nov. 12, 2021) (no abuse of discretion to decline to consider statute of limitations defense that was asserted only after report and recommendation recommended default judgment); *Richardson v. Boyd Sch., Inc.*, No. 7:14-cv-23, 2014 WL 1577015, *3 (N.D. Ala. April 15, 2014) (where defendant failed to raise affirmative defense of statute of limitations, court would not consider it in motion for default judgment).  The Court may therefore consider the statute of limitations when assessing the adequacy of AMP's allegations.

In Florida, the statute of limitations for a breach of contract based upon a written instrument is five years from the date of breach. Fla. Stat. § 95.11(2)(b); *Tech. Packaging, Inc. v. Hanchett*, 992 So.2d 309, 313 (Fla. 2d DCA 2008) (citations omitted). AMP alleges that HemaTone breached the Distribution Agreement by failing to satisfy its minimum order commitments at the end of 2013, 2014, and 2015.  Thus, the statute of limitations for the claim expired, at the latest, on December 31, 2020.  AMP did not file its counterclaim until March 8, 2022. Doc. 55.  Accordingly, this breach of contract claim is time-barred and cannot be the basis of a default judgment.

### b.  December 2018 Order

In its motion for default judgment, AMP contends that HemaTone failed to pay the remaining balance on a product order placed in December 2018, and failed to reimburse AMP for custom-made product packaging for the same order, resulting in a loss of $33,218.10. Doc. 73 at 10.  The Distribution Agreement required HemaTone

to "pay [AMP] for the products in accordance with the current prices set by [AMP] at such time as the Products are ordered[.]" Doc. 55-1 at 5.

AMP now asserts that the failure to pay for the full December 2018 order constitutes a breach of contract.  However, this alleged breach is not supported by the factual allegations in the counterclaim.  The allegations do not refer to a December 2018 order, and do not directly allege that HemaTone did not pay for all or part of any order.  The only allegation that approaches the topic simply alleges that HemaTone "failed to pay timely and in accordance with the Distribution Agreement"—with no other information whatsoever. Doc. 55 ¶ 26.  An exhibit to the counterclaim refers to a 2017 custom order that HemaTone did not pay for, leading to the inference that the allegation of a "fail[ure] to pay timely" referred to that incident. *See* Doc. 55-3.  In any event, the counterclaim's vague allegation is no more than a "naked assertion devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted).  It is not enough to plausibly allege that HemaTone breached the agreement by failing to pay or reimburse AMP for the December 2018 order.[3] *See*, *e.g.*, *Ontario Ltd. v. HDZ Logistics, LLC*, No. 6:19-cv-506, 2019 WL 12381096, *3 (M.D. Fla. Oct. 16, 2019) (plaintiff not entitled to default judgment on a cause of action not asserted in the complaint).  As a result, the Court cannot conclude that there is a "substantive, sufficient basis in the pleadings for the particular relief sought." *Tyco Fire & Sec., LLC*,

---

[3] The Court also observes that AMP has failed to provide any documentation regarding the alleged missing balance of $29,050.00 besides the Christenberry declaration, unlike the other categories of damages that it asserts. *See* Doc. 73-1 ¶ 13.

218 F. App'x 860, 863 (11th Cir. 2007). The motion for default judgment based on this breach is due to be denied.

c. *CFDA Expenses*

Lastly, AMP alleges that HemaTone breached the Distribution Agreement by failing to handle Chinese regulatory obligations. The Distribution Agreement required HemaTone "to obtain, or cause to be obtained, at its sole cost and expense, any governmental approval and make, or cause to be made, any filings or notifications required under all applicable laws, regulations and ordinances…to enable the Products…to be sold"; to comply with all governmental regulations and ordinances; and to obtain the appropriate licenses or permits required to import products into each destination. Doc. 55 at 3-4. The counterclaim alleges that HemaTone's regulatory missteps included the failure to properly register and correct labeling as required by the Chinese Food and Drug Administration ("CFDA"), and the failure to perform corrective action and remedy registration and documentation issues with the CFDA. Doc. 55 ¶ 29. It further alleges that AMP "incurred significant damages as it has been forced to repair the years of damage caused by the negligence and malfeasance of" HemaTone with respect to the regulatory requirements. *Id.* ¶ 30. AMP elaborates on the damages in its motion for default judgment, requesting compensation of $1,490.00 in "legalization fees to remedy issues with the CFDA," and $1,061.00 "for costs related to the production of product to provide to the CFDA for testing," which HemaTone did not provide to the CFDA. Doc. 73 at 11. Both requests are supported by a sworn declaration and receipts. Doc. 73-1 ¶¶ 15-16; Doc. 73-4.

Although it is vague, AMP's request for compensation of legalization fees to remedy issues with the CFDA is consistent with the allegation in its counterclaim that HemaTone failed to remedy issues with the CFDA.  The Court therefore finds that this allegation states a claim for a breach of contract that supports AMP's damage request of $1,490.00.  However, the counterclaim's allegations do not refer or even allude to the production of testing product that HemaTone failed to provide to the CFDA.  While the allegations plausibly allege that HemaTone did not comply with various CFDA requirements, alleged damages required to "repair[] the years of damage" caused by HemaTone's lack of compliance do not reasonably encompass reimbursement for testing product that HemaTone did not use.  The damage request of $1,061.00 is not supported by the allegations in the counterclaim.

### d.  Damages

Of the various types of damages for which AMP requests a monetary judgment, only compensation for the CFDA regulatory fees has a "substantive, sufficient basis in the pleadings." *Tyco*, 218 F. App'x 863.  AMP's motion for final default judgment is therefore due to be granted-in-part and denied-in-part as to the breach of contract claim.  As a result, its damages request of $669,039.93 and $321,348.00 in interest must be denied.  Instead, AMP is entitled to damages in the amount of $1,490.00, plus any prejudgment interest that accrued since the charges were incurred on July 5, 2022, and December 19, 2022, through the date of this Order. *See* Doc. 73-3.

Even in the default judgment context, a court "has an obligation to assure that there is a legitimate basis for any damage award it enters." *Anheuser Busch, Inc. v.*

*Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003).  Under Rule 55 and Eleventh Circuit caselaw, a default judgment awarding cash damages cannot be properly entered without an evidentiary hearing, "unless the amount claimed is a liquidated sum or one capable of mathematical calculation." *Organizacion Miss America Latina, Inc. v. Urquidi*, 712 F. App'x 945, 948 (11th Cir. 2017), quoting *Adolph Coors Co. v. Movement Against Racism and the Klan*, 777 F.2d 1538, 1543 (11th Cir. 1985).  Where the damages award is "an ascertainable value," it is capable of mathematical calculation and the court need not hold an evidentiary hearing. *See Organizacion Miss America*, 712 F. App'x at 948 (district court did not abuse its discretion in declining to hold a hearing where damages for breach of contract were ascertainable by calculating the money not paid or wrongly collected by the defaulted party, and the damages for statutory violations were capable of mathematical calculation).  Courts have also held that an evidentiary hearing is not necessary where the damages are ascertainable from documentary evidence or detailed affidavits. *See, e.g.*, *Suntrust Bank v. Milano*, No. 8:10-cv-1258, 2010 WL 2804855, *1 (M.D. Fla. July 15, 2010) (Kovachevich, J.), citing *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979) (on a motion for default judgment, cash damages "should not have been awarded without a hearing or a demonstration by detailed affidavits establishing the necessary facts.").[4]

Here, the cash damages to which AMP is entitled from the sufficiently-pleaded breach are capable of mathematical calculation without an evidentiary hearing.

---

[4] In *Bonner v. Pritchard*, 661 F.2d 1206 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit decided prior to October 1, 1981.

Specifically, they are ascertainable from the sworn information contained in the declaration and attached receipts. *See*, *e.g.*, *Pan Ocean Singapore PTE, Ltd. v. Pan Ocean USA, LLC*, No. 6:09-cv-1206, 2010 WL 5209317, *2 (M.D. Fla. Nov. 23, 2010) (damages were ascertainable where complaint attached invoices and bills of lading corresponding with each breach of contract claim). Therefore, AMP is entitled to receive the amount of regulatory fees that it paid to rectify HemaTone's breach, $1,490.00, plus prejudgment interest. AMP is directed to provide a new calculation of prejudgment interest based on the revised damages award of $1,490.00 (comprised of $880.00 incurred on July 5, 2022, and $610.00 incurred on December 19, 2022) through the date of this Order.

### 2. Declaratory Judgment (Count II)

Count II of the counterclaim requests a declaratory judgment that:

1. The Distribution Agreement Expired by its own terms on May 31, 2016;
2. HemaTone has no right or license to AMP's marks;
3. HemaTone shall discontinue use of these marks immediately; and
4. AMP is not infringing upon the Si Fu Kang mark.

Doc. 55 ¶ 53. AMP's motion for default judgment also requests declarations that HemaTone's trademark registrations for ScarHeal trademarks belong to AMP, and that HemaTone cannot use, market, or sell products bearing the ScarHeal trademarks. Doc. 73 at 14-15.

The Declaratory Judgment Act provides, "In a case of actual controversy…any court of the United States…may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be

sought." 28 U.S.C. § 2201(a).  A party seeking a declaratory judgment must show "(1) that they personally have suffered some actual or threatened injury as a result of the alleged conduct of the defendant; (2) that the injury fairly can be traced to the challenged action; and (3) that it is likely to be redressed by a favorable decision." *GTE Directories Pub. Corp. v. Trimen Am., Inc.*, 67 F.3d 1563, 1567 (11th Cir. 1997), quoting *U.S. Fire Ins. v. Caulkins Indiantown Citrus*, 931 F.2d 744, 747 (11th Cir. 1991). Whether to grant declaratory relief is in the discretion of the Court. *Smith v. Casey*, 741 F.3d 1236, 1244 (11th Cir. 2014) ("[T]he Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants.").

First, the Court finds that there is an actual controversy between the parties for the purpose of jurisdiction.  The "threshold question" for a claim arising under the Declaratory Judgment Act is "whether a justiciable controversy exists." *Atlanta Gas Light Co. v. Aetna Cas. & Surety Co.*, 68 F.3d 409, 414 (11th Cir. 1995); *see Zurich Am. Ins. Co. v. Southern-Owners Ins. Co.*, 248 F. Supp. 3d 1268, 1280 (M.D. Fla. 2017) (emphasizing that the "actual controversy" requirement is "jurisdictional" and a "threshold question in an action for declaratory relief") (internal quotation marks omitted).  To confer jurisdiction, "under the facts alleged, there must be a substantial continuing controversy between parties having adverse legal interests." *Emory v. Peeler*, 756 F.2d 1547, 1552 (11th Cir. 1985).  Here, the Third Amended Complaint and AMP's counterclaim both assert competing rights to the Si Fu Kang Mark and the sale of Scar Heal products in China.  The counterclaim alleges that HemaTone's use of the

Si Fu Kang Mark and other AMP marks is ongoing. Doc. 55 ¶¶ 17, 49.  Accordingly, a justiciable controversy exists with respect to the declaratory relief AMP seeks.

The primary form of declaratory relief that AMP seeks concerns the parties' rights to the Si Fu Kang Mark and other AMP trademarks.  The Distribution Agreement granted HemaTone the exclusive right in China to use "Trademarks," which were defined as:

> those trademarks and the trade names, distinctive label designs, electronic and printed promotional and advertising material and all other communications in whatever form used or to be used in conjunction with the production, marketing, sale or distribution of the products.

Doc. 55-1 at 2.  However, the Agreement did not "give [HemaTone] any vested right, title, or interest in…any of the Trademarks[.]" *Id.*  Upon termination of the Agreement, HemaTone "shall discontinue the use of manufacturer's Trademarks and any items bearing manufacturer's Trademarks, except that [HemaTone] may sell its remaining inventory of the Products." *Id.* at 7.

The plain language of the Distribution Agreement makes clear that HemaTone has no continuing right to the ScarHeal product names or to any "distinctive label design" used in conjunction with the sale of ScarHeal products—which must, by definition, include the Si Fu Kang Mark.  HemaTone points out in the Third Amended Complaint that the Distribution Agreement does not expressly mention the Si Fu Kang Mark. Doc. 52 ¶ 41.  In the absence of an express provision *excluding* it from the broad definition of "Trademarks," however, it must be presumed included.  As will be discussed further *infra*, the Distribution Agreement is no longer in effect.  Accordingly,

AMP is entitled to a declaratory judgment that HemaTone has no right or license to use "Trademarks," as defined by the Distribution Agreement, including the Si Fu Kang Mark.  Likewise, it is entitled to a declaration that AMP is not infringing upon the Si Fu Kang Mark.

In its motion, AMP also seeks a declaration "that all Chinese trademark registrations of the Scar Heal trademarks belong to AMP[.]" Doc. 73 at 14-15.  But the issue of registrations goes beyond the scope of the counterclaim, which does not include this request.  Nor has AMP demonstrated that this Court even has the authority to order the transfer of Chinese trademark registrations.  The Court will therefore exercise its discretion to declare only that the marks belong to AMP, and HemaTone has no right or license to use them.

Next, AMP requests a declaration that directs HemaTone to discontinue use of the marks immediately and that prohibits any future use, market, or sale of products bearing the mark.  The latter request is belied, at least in part, by the Distribution Agreement's provision that HemaTone may continue to sell any products bearing the disputed marks that it still had in its inventory at the time of termination; it is unknown whether HemaTone is still selling any inventory from that period.  However, there is a broader problem with AMP's request.  The relief it seeks is coercive, resembling an injunction more than a declaratory judgment, even though a declaratory judgment cannot be enforced like an injunction. *See Steffel v. Thompson*, 415 U.S. 452, 469 (1974) (differentiating between declaratory judgments and injunctive relief, and describing declaratory relief as "a much milder form of relief" that is "persuasive" but "not

ultimately coercive[.]").  AMP has not moved for an injunction.  Therefore, the Court declines to issue a declaratory judgment that attempts to enjoin HemaTone from future action.  Rather, it limits itself to the declaration, described above, that HemaTone has no right or license to use the marks, which belong to AMP.

AMP's final request is for a declaratory judgment that "the Distribution Agreement expired by its own terms on May 31, 2016."  Doc. 73 at 14-15.  Although the Court agrees that the Distribution Agreement has terminated, AMP's proposed date of termination is not supported by the materials on which it relies.  AMP asserts that the contract expired by its own provisions three years after going into effect, upon HemaTone's failure to satisfy the minimum order commitments.  The Distribution Agreement does, indeed, provide for the option of such an expiration.  *See* Doc. 55-1 at 2 ("This agreement shall be renewed automatically for consecutive renewals of 1 (one) year each, provided Distributor has purchased from the Company the minimum amounts of Products[.]").  However, the other allegations and documents AMP has produced make clear that at least some of the rights, obligations, and duties described in the Distribution Agreement continued well beyond May 31, 2016.  First, in June and September 2017, AMP produced product samples that it expected HemaTone to provide to the CFDA for testing.  *See* Doc. 73-4; Doc. 73-1 ¶ 16.  But if the Distribution Agreement had terminated in 2016, HemaTone would no longer be responsible for handling Chinese regulatory requirements.  Further, AMP requested damages for a breach of contract based on the 2017 product samples—in marked conflict with its simultaneous assertion that the contract had terminated more than a year before the

damages occurred.   AMP also represents that it fulfilled a product order that HemaTone placed in December 2018, which included the production of custom packaging—packaging that presumably bore AMP's marks. Doc. 73-1 ¶¶ 13-14; Doc. 73-2.   AMP requested damages for a breach of contract based on the failure to pay for this order as well.   Its representations about the December 2018 order, too, are therefore in conflict with an allegation that HemaTone's permission to sell products bearing AMP's marks ended in 2016.   Finally, the letter AMP sent to HemaTone on May 1, 2018, is not consistent with a 2016 termination of the Distribution Agreement. Doc. 55-3.   Although it refers to the Agreement as "expired," the letter is a notice of non-renewal that makes clear the parties' agreement continued at least until the date of the letter. *Id.*

A defaulted defendant is deemed to admit the plaintiff's well-pleaded allegations of fact. *See*, *e.g.*, *Surtain v. Hamlin Terrace Foundation*, 789 F.3d 1239, 1245 (11th Cir. 2015).   However, a party's allegations are not well-pleaded when they are contradicted by the party's own exhibits or its other statements. *See*, *e.g.*, *Crenshaw v. Lister*, 556 F.3d 1283, 1292 (11th Cir. 2009), citing *Simmons v. Peavy-Welsh Lumber Co.*, 113 F.2d 812, 813 (5th Cir. 1940) ("Where there is a conflict between allegations in a pleading and exhibits thereto, it is well settled that the exhibits control."); *Frone v. JP Morgan Chase & Co*, 695 F. App'x 468, 472 (11th Cir. 2017) (conclusory allegations were not well-pleaded when they were contradicted by specific factual allegations).   Accordingly, the Court declines to issue a declaratory judgment that the Distribution Agreement terminated on May 31, 2016.   The well-pleaded allegations do not establish the true

date that the Distribution Agreement terminated.  The Court will declare only that it is no longer in effect.

The motion for default judgment with respect to Count II is therefore granted-in-part and denied-in-part.

Accordingly, it is **ORDERED**:

1. Defendant Atlantic Medical Products, LLC's Motion for Final Default Judgment (Doc. 73) is GRANTED-IN-PART and DENIED-IN-PART.

2. The Motion is granted to the extent that AMP is entitled to a default judgment on some allegations of Count I of its counterclaim, and is entitled to damages in the amount of $1,490.00 plus prejudgment interest.  AMP is directed to provide a calculation of prejudgment interest within FOURTEEN (14) DAYS of this Order.

3. With respect to Count II of the counterclaim, AMP is also entitled to a default declaratory judgment in its favor, to the extent described in this Order.  A declaratory judgment will be entered by separate Order.

4. The Motion is otherwise denied.

**DONE** and **ORDERED** in Tampa, Florida on September 7, 2023.

Charlene Edwards Honeywell
United States District Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties